Myron Hawkins, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

548

Submitted on briefs July 2, 1984, to Judges Craig and Palladino, and Senior Judge Barbieri, sitting as a panel of three.

*Lester G. Nauhaus,* Public Defender, with him, *John H. Corbett, Jr.,* Chief, Appellate Division and *Paulette J. Balogh,* Appellate Counsel, for petitioner.

*Robert A. Greevy,* Chief Counsel, with him, *Arthur R. Thomas,* Assistant Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

Opinion by Senior Judge Barbieri, April 10, 1985:

This is an appeal by Myron Hawkins who petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) which denied him administrative relief from a Board recommitment order. That recommitment order revoked his parole and recommitted him to prison as a technical and convicted parole violator to serve twenty-four months on backtime.

The record presents the following factual scenario. Hawkins was initially sentenced in 1973 to a term of four to ten years by the Court of Common Pleas of Allegheny County following his conviction for Aggravated Assault[1] and Receiving Stolen Property.[2] That sentence carried an original maximum term expiration date of December 27, 1983. The Board granted Hawkins parole on this sentence effective December 27, 1977 at which time he was released from the State Correctional Institution at Pittsburgh (SCI-Pittsburgh). While on parole, he was arrested in 1980 and convicted of Retail Theft.[3] As a result of that conviction, the Board, after affording him the required hearings, on November 21, 1980, revoked his parole and returned him to prison as a technical and convicted parole violator to serve twenty-four months on backtime. At that time, the Board also extended the maximum term expiration date of his 1973 Aggravated Assault sentence to December 10, 1986.[4] On June 10, 1982, the Board granted him reparole on the 1973 sentence at which time he was again released from SCI-Pittsburgh.

On November 14, 1982, Hawkins was arrested by Pittsburgh Police following a car chase through Pittsburgh in which he was driving a stolen 1979 Ford. The chase ended abruptly when Hawkins crashed the stolen car and attempted to flee the scene on foot. Pursuing police officers gave chase and he was arrested three blocks away from the scene of the crash. There were

---

[1] 18 Pa. C. S. §2702.

[2] 18 Pa. C. S. §3925.

[3] 18 Pa. C. S. §3939.

[4] Section 21.1(a) of the Act of August 6, 1941 (Parole Act), P.L. 861, *as amended*, 61 P.S. §331.21a(a), mandates that where a parolee is returned to prison following a new criminal conviction, the parolee receives no credit on his initial sentence for time spent "at liberty" on parole.

no other occupants of the stolen car. The wrecked stolen car was impounded by police who searched the vehicle. That search turned up a loaded .38 caliber revolver on the floor of the driver's side of the car. As a result of that arrest, Hawkins was charged with Unauthorized Use of a Motor Vehicle,[5] Violating the Uniform Firearms Act (VUFA),[6] and several summary offenses under the Vehicle Code. He was subsequently released on bail.

After a prima facie case was found as to the new charges at a criminal preliminary hearing held on December 3, 1982, the Board arrested Hawkins and charged him with violating general condition 5B[7] of his parole which requires that parolees refrain from owning or possessing any firearms or other weapons. The Board also ordered him detained pending disposition of the new criminal charges. Hawkins was convicted in Allegheny County Common Pleas Court on April 27, 1983 of the charge of Unauthorized Use of a Motor Vehicle and subsequently sentenced to a term of one to two years. He was found "not guilty" of the VUFA charges.

On August 4, 1983, the Board afforded Hawkins a parole Violation/Revocation Hearing at SCI-Pittsburgh before a Board hearing examiner. Also present at that hearing were his parole agent and Pittsburgh Police Officer Howard Ball. Officer Ball was one of the officers who pursued and arrested Hawkins on November 14, 1982 and testified as to the circumstances of Hawkins' arrest and the discovery of the firearm. Hawkins elected to waive counsel represen-

[5] 18 Pa. C. S. §3928.

[6] Hawkins was charged with two counts of Violating the Uniform Firearms Act: 18 Pa. C. S. §6105 (Former Convict Not to Own a Firearm) and 18 Pa. C. S. §6106 (Firearms Not to be Carried Without a License).

[7] 37 Pa. Code §63.4(5)(ii).

tation and chose to represent himself.[8] Hawkins testified as to his version of the events of November 14, 1982 and cross-examined both Officer Ball and his parole agent.

As a result of that hearing, on September 8, 1983, the Board revoked Hawkins' parole and ordered him returned to prison as a technical violator to serve twelve months backtime for violating parole condition 5B and as a convicted parole violator to serve twelve months on backtime for the new conviction for a total of twenty-four months on backtime. The Board also extended the maximum term expiration date of his 1973 Aggravated Assault sentence to August 22, 1987. Hawkins filed an administrative appeal with the Board pursuant to 37 Pa. Code §71.5(h). The Board denied his administrative appeal on October 31, 1983 and a timely petition for review to this Court followed.

In his appeal to this Court, Hawkins raises four assignments of error whereby he challenges (1) the sufficiency of the Board's evidence supporting the technical parole violation; (2) the Board's power to revoke his parole as a technical parole violator where he was previously acquitted of the related criminal charges; (3) the Board's computation of the backtime it imposed for the parole violations; and (4) the Board's computation of the effective date of that backtime and his eligibility for reparole consideration. We shall address these issues *seriatim*. We are cognizant of our limited scope of review of a Board recommitment order which is to determine whether necessary findings are supported by substantial evidence, are in

---

[8] Hawkins originally waived counsel on July 7, 1983 at which time he signed a Board form acknowledging his waiver of counsel, PBPP-72, which was witnessed by the Institutional Parole Supervisor at SCI-Pittsburgh. The Board hearing examiner reaffirmed this waiver of counsel at Hawkins' Violation/Revocation Hearing on August 4, 1983.

accordance with law, and whether any constitutional rights of the parolee have been violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Zazo v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 198, 470 A.2d 1135 (1984).

Hawkins bases his challenge to the sufficiency of the Board's evidence supporting the technical violation upon his contention that Officer Ball's testimony is hearsay evidence and is legally insufficient to support a finding of a technical parole violation. This characterization of Officer Ball's testimony is incorrect. Officer Ball was one of the arresting officers who was at the scene of the car crash and Hawkins' arrest. His testimony, therefore, was based upon firsthand knowledge and not hearsay. Ball identified Hawkins as the sole occupant of the stolen vehicle and that the loaded revolver was discovered in the driver's compartment of that vehicle. Upon questioning by the hearing examiner, Ball also stated that there was no opportunity for anyone else to have tampered with the vehicle from the time Hawkins abandoned it until the time the weapon was discovered by police. This testimony, if believed, is sufficient to support the Board's finding that Hawkins violated his parole by being in possession of a firearm. The record also shows that a prima facie case was made out on the VUFA charges at a criminal preliminary hearing at which time Hawkins was bound over for trial on the VUFA charges.[9] Had the Board held the Violation Hearing prior to his criminal trial, the prima facie finding would have also been sufficient evidence upon which to base a finding that he violated his parole. *Cf. Commonwealth v.*

[9] The record contains a copy of the common pleas court criminal docket sheet showing that Hawkins was indeed tried in criminal court on two VUFA counts. Hawkins also admits that the VUFA charges were bound over for trial following the December 3, 1982 criminal preliminary hearing.

*Gochenaur,* 331 Pa. Superior Ct. 187, 190, 480 A.2d 307, 309-310 (1984) (the finding of a prima facie case at a criminal preliminary hearing is sufficient evidence, *by itself,* to prove a violation of parole by a preponderance of the evidence). Here, however, the Board acceded to Hawkins' request that his Violation Hearing be postponed until after his criminal charges were disposed of. Since the disposition of those charges resulted in an acquittal of the VUFA counts, the result of the preliminary hearing holds less weight than otherwise would have been the case. Despite Hawkins' acquittal of the VUFA charges in criminal court, the fact that a prima facie case was found at his criminal preliminary hearing does support the testimony of Officer Ball and adds evidentiary support to the Board's finding as to the technical violation. Accordingly, we hold that the Board has met its burden of proving the technical parole violation of owning or possessing a firearm by a preponderance of the evidence. *See Hossback v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 344, 471 A.2d 186 (1984).

Hawkins' next contention is that the Board abused its discretion when it found he violated his parole by possessing a firearm after he was acquitted of the VUFA charges in criminal court. We are, of course, mindful of our Supreme Court's decision in *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), in which Justice (now Chief Justice) Nix held that the principle of collateral estoppel precluded the Commonwealth from revoking probation on the basis of alleged criminal behavior after the probationer was acquitted of the criminal charges arising out of that same behavior. For the reasons which follow, we do not believe that the collateral estoppel principles outlined in *Brown* are applicable to the Board's parole revocation proceedings.

The circumstances in *Brown* involved an individual who was on probation for a prior conviction. While parole and probation are similar, they are not the same and the differences between the two are significant. Where a probationer is alleged to have violated probation and is given a hearing, that hearing could result in the probationer having his probation revoked and having a sentence imposed for the prior conviction. In many cases, this involves a probationer being faced with prison for the *first time* if probation is revoked and he is sentenced to a jail term. It was this possibility which was recognized by the United States Supreme Court in *Mempa v. Rhay,* 389 U.S. 128 (1967), in which the Supreme Court found a probation revocation hearing to be a "critical phase" of a criminal prosecution at which the probationer is entitled to the full panoply of constitutional rights and safeguards as is an accused in a criminal trial. The probation revocation hearing is, for all intents and purposes, an extension of the sentencing process in a criminal prosecution. In comparison a parolee already has had a sentence imposed by the trial court for his conviction. The Board is without power to alter a judicially-imposed sentence. *Gundy v. Pennsylvania Board of Probation and Parole,* 82 Pa. Commonwealth Ct. 618, 622-623, 478 A.2d 139, 141 (1984). Where the Board alleges that a parolee has violated the terms of his parole, the parolee may only be directed by the Board to complete the remainder of the existing judicially-imposed sentence. *McClure v. Pennsylvania Board of Probation and Parole,* 75 Pa. Commonwealth Ct. 176, 461 A.2d 645 (1983). State parole revocation proceedings have been held by the United States Supreme Court as civil administrative hearings and *not* part of a criminal prosecution, *Morrissey v. Brewer,* 408 U.S. 471 (1972), and that parolees are *not* entitled to the same panoply of constitutional rights and safe-

guards as are defendants in a criminal prosecution. *Id.*

*Brown* is also distinguishable from the case at bar in that the only violation of probation alleged in *Brown* was new criminal conduct—the probationer's alleged participation in a robbery. Justice Nix expressly recognized that probation may be properly revoked without the requirement that actual criminal behavior be established. *Brown,* 503 Pa. at 527, 496 A.2d at 1377. The same principle holds true with parole, as Section 21.1(b) of the Parole Act, 61 P.S. §331.21a(b), expressly empowers the Board to revoke the paroles of those parolees who have violated one or more conditions of their parole. A "technical violation" of parole, with which we are concerned here, results merely from a parolee's failure to observe the conditions of parole. *Hines v. Pennsylvania Board of Probation and Parole,* 491 Pa. 142, 420 A.2d 381 (1980).

It is clear from an examination of the general conditions of parole that actual criminal conduct is not necessary in order to establish a technical parole violation. The general conditions of parole were established by the Board pursuant to a statutory mandate found in Section 23 of the Parole Act, 61 P.S. §331.23. Pursuant to Section 23, the Board promulgated regulations establishing standards of conduct governing the behavior of parolees under the Board's supervision. These standards, known as "general conditions of parole," are found at 37 Pa. Code §63.4. Among those general parole conditions is condition 5B which states that parolees are to "refrain from owning or possessing any firearms or other weapons." 37 Pa. Code §63.4(5)(ii). For a parolee to violate this condition of parole, no criminal conduct or behavior is required. For the Board to show a violation of condition 5B it need only show that the parolee was in pos-

session of a firearm or "other" weapon. There is no requirement that the parolee possessed the weapon illegally or that he intended to possess it. We have already held that the definition of "weapon" as found in condition 5B is a much broader concept than that contained in the Crimes Code. *Michael v. Pennsylvania Board of Probation and Parole,* 85 Pa. Commonwealth Ct. 173, 481 A.2d 711 (1984). We have likewise held that we will not, as a reviewing court, impose an additional element of intent to sustain a finding of a technical parole violation where the parole condition is clearly worded so as not to require intentional conduct. *Zimmerman v. Pennsylvania Board of Probation and Parole,* 83 Pa. Commonwealth Ct. 282, 476 A.2d 1016 (1984).[10]

In that the elements of a technical parole violation involving condition 5B are not the same as those which must be proven by the Commonwealth involving the VUFA charges, the collateral estoppel principles outlined in *Brown* are not applicable to this case and the Board's finding that Hawkins violated condition 5B of his parole is, therefore, proper.

Hawkins' challenge to the backtime imposed for his parole violations may be dealt with summarily. As he duly notes, the published presumptive range for a violation of general condition 5B is six to twelve months. 37 Pa. Code §75.4. The backtime imposed by the Board, twelve months, is within that range. We have already held that there is substantial evidence supporting the Board's finding that he violated condition 5B. Where there exists substantial evidence in the record to support the Board's finding that a pa-

---

[10] In *Commonwealth v. Dorsey,* 328 Pa. Superior Ct. 241, 247, 476 A.2d 1308, 1311 (1984), it is stated:

. . . [T]he issue as to whether parole or probation may be revoked for less than willful conduct has remained as an open question in Pennsylvania. (Footnote omitted.)

rolee violated parole and the backtime imposed is within the published presumptive range for that parole violation, we will not interfere with the Board's exercise of its discretion in setting the amount of backtime to be served. *Chapman v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 49, 484 A.2d 413 (1984).

We now turn to Hawkins' final contention that the Board erred in setting the effective date of his return as a parole violator and improperly computed his reparole eligibility date. Our review of the record and the Board's computation of Hawkins' reparole eligibility date convinces us that there has been no error. Hawkins was confined solely because of the Board's warrant from December 15, 1982 until June 30, 1983, a period of six months, fifteen days. The Board duly credited his backtime with this time. *See Gaito v. Pennsylvania Board of Probation and Parole,* 488 Pa. 397, 403, 412 A.2d 568, 571 (1980). When he was sentenced on the new criminal conviction in Allegheny County Common Pleas Court on June 30, 1983, Hawkins was no longer confined *solely* because of the Board's warrant, he was subject to the new sentence. The period of confinement from June 30, 1983 until September 8, 1983, the date of the Board's recommitment order, was due primarily to the new sentence imposed as a result of Hawkins' April 20, 1983 conviction. That time, two months, eight days, is properly credited towards his new sentence of one to two years. The effective date of the Board's recommitment order is September 8, 1983 at which time Hawkins commenced serving the twenty-four months backtime imposed by the Board with credit being given for the six months, fifteen days, he served on a Board warrant prior to being sentenced on the new conviction. That new sentence superseded the Board warrant in priority until the Board recorded its recommitment order

on September 8, 1983. The reparole eligibility date of February 23, 1985 is, therefore, proper and correct.

Having found the Board's order supported by substantial evidence and no errors of law or violation of constitutional rights committed, we shall affirm the Board's denial of administrative relief.

ORDER

AND Now, this 10th day of April, 1985 the order of the Pennsylvania Board of Probation and Parole at Parole No. 5085-H, dated October 31, 1983, which denies administrative relief to Myron Hawkins, is hereby affirmed.

Judge WILLIAMS, JR. did not participate in the decision in this case.