512 A.2d 66

Curtis Boswell, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs December 17, 1985, to Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*Leonard N. Sosnov*, Assistant Defender, with him, *John W. Packel*, Assistant Defender, Chief of Appeals Division, and *Benjamin Lerner*, Defender, for petitioner.

*Arthur R. Thomas*, Assistant Chief Counsel, with him, *Robert A. Greevy*, Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, June 27, 1986:

This appeal results from an order of the Board of Probation and Parole (Board) which denied administrative relief sought by the petitioner, Curtis Boswell (petitioner), from a Board parole revocation order. That revocation order revoked petitioner's parole and returned him to prison as a technical parole violator to serve eighteen months of backtime.

Petitioner was originally granted parole on December 12, 1979, with his release conditioned upon, among other things, the requirements that he "refrain from owning or possessing any firearm or other weapons," and that he "refrain from any assaultive behavior." On March 3, 1984, petitioner was arrested and charged with shooting a bartender, Ronald J. Robinson (Robinson) with a rifle. A parole detainer was lodged against petitioner on the following day because of the arrest.

On June 25 and 26, 1984, the petitioner was tried before a jury on the charges arising out of the alleged shooting. The counts included, among others, charges of aggravated assault and of carrying a firearm without a license. In the course of the trial Robinson testified that he had broken up a crap game in the rear of the bar at which he worked, that petitioner, a participant, had become angry because of the disturbance, and that he returned approximately ten minutes later with the rifle and shot him. The police detective who arrested petitioner testified that the firearm petitioner allegedly used had never been located.

Petitioner's defense was one of alibi. While admitting that he had been at the crap game, petitioner testified before the jury that he immediately left and went to another bar, and that he never returned to Robinson's place of employment. Petitioner also testifed that several participants in the crap game were displeased at the game's breakup. Neither petitioner nor the prosecution offered corroborative testimony with repect to, respectively, the alibi and the identity of the assailant.[1]

The jury thereafter returned a verdict of not guilty. Nevertheless, the Board, acting on its prior detainer, issued to petitioner a Notice of Charges and Hearing. That Notice charged petitioner with violation of the parole conditions that he refrain from possessing firearms and that he refrain from assaultive behavior, and detailed that these charges arose from the same alleged shooting incident.

---

[1] Counsel for petitioner repeatedly requested continuances in order to obtain corroborative testimony from a woman who was allegedly at the second bar and could support petitioner's alibi. The potential witness, whose identity allegedly only became known to petitioner and counsel at a late date, was apparently vacationing and could not be contacted. The continuance requests were denied by the trial judge.

At a parole revocation hearing convened thereafter,[2] Robinson appeared and repeated his story. Petitioner, meanwhile, maintained his story that he had never returned to the bar, never possessed a rifle, and never shot Robinson. On November 7, 1984, the Board issued its revocation order, having adopted the hearing examiner's findings that Robinson's testimony was "sufficient to establish a preponderance [sic] in regard to Violation of Condition No. 5-B, possession of a rifle and Condition No. 5-C, assaultive behavior." After being denied administrative relief from the order, petitioner initiated this appeal.

Our own review of the present controversy is limited to determining whether necessary findings are supported by substantial evidence, whether an error of law was committed, or whether any of the parolee's constitutional rights were violated. *Cox v. Board of Probation and Parole*, 507 Pa. 614, 620, 493 A.2d 680, 683 (1985). Petitioner has been persistent in his assertion that the Commonwealth is collaterally estopped from re-litigating, in the course of the parole revocation hearing, the issue of whether he possessed a weapon and engaged in assaultive behavior after the not guilty verdict was entered pursuant to his alibi defense.[3]

Heretofore this Court has articulated a reluctance to apply collateral estoppel in the realm of parole hearings. Although the Supreme Court in *Commonwealth v.*

---

[2] Included in the Board's subsequent denial of administrative relief is a statement that petitioner requested a continuance of the parole revocation hearing until *after* the disposition of the criminal charges. *Board Letter* of December 19, 1984. There is no support from the record for this proposition, and the Board does not, on appeal, raise the issue at all either in a factual or legal context.

[3] Counsel for petitioner initiated his objection to relitigation of petitioner's involvement in the shooting at the commencement of the parole revocation hearing and has successfully preserved the issue in his successive appeals.

*Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), specifically held that the Commonwealth could be collaterally estopped from revoking *probation* after a trial court acquittal on related charges, we have noted that significant differences exist between parole and probation which would make *Brown* inapplicable in the former context. *See Hawkins v. Pennsylvania Board of Probation and Parole,* 88 Pa. Commonwealth Ct. 547, 554-55, 490 A.2d 942, 946-47 (1985) *(allocatur denied).*[4]

---

[4] The principal difference, as recited in *Hawkins,* is the fact that in the probation context the probationer is, at least in some cases, for the first time being faced with an actual prison term; the probation revocation hearing is thus a "critical phase" of the criminal prosecution, in the course of which the probationer is "entitled to the full panoply of constitutional rights and safeguards as [he was at the] criminal trial." 88 Pa. Commonwealth Ct. at 554-55, 490 A.2d at 946-47. Parole proceedings, in contrast, are "civil administrative hearings and *not* part of a criminal prosecution." *Id.* (Emphasis in original.) Another difference, noted in *Nickens v. Pennsylvania Board of Probation and Parole,* 93 Pa. Commonwealth Ct. 313, 502 A.2d 277 (1985), is that the judge presiding at the criminal trial "generally also decides the probation violation" and thus can readily determine whether the circumstances in the criminal case correspond with the elements of the alleged probation violation. In contrast, we noted that an appreciable burden would be placed on the Board "were it required to conduct an exhaustive independent examination of the criminal record" in the course of its own independent parole revocation proceedings. *Id.* at 318 & n. 9, 502 A.2d at 279 & n. 9.

Notoriously—and properly—absent from our prior distinguishing, however, is the obvious fact that the burden of proof required of the Commonwealth is markedly different in the criminal context and that of probation/parole revocation. In the former realm, proof of commission of the crime must be established beyond a reasonable doubt, while in the latter proof of a violation need only be supported by a preponderance of the evidence. *Hossbeck v. Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 344, 347, 471 A.2d 186, 188 (1984). In *Brown* the Supreme Court "reject[ed] the suggestion that the difference in burden of proof is conclusive upon the question" of the application of collateral es-

Notwithstanding that reluctance, however, we have been equally straightforward in stating that where "the ultimate issue in both the criminal prosecution and the parole violation proceeding [are] the same," an "acquit-

toppel. 503 Pa. at 523, 469 A.2d at 1373-74. Although articulated in the context of probation, we find this rejection to necessarily embrace the lesser burden of proof demanded in the realm of parole.

That this was in fact the intent of our Supreme Court is most evident in *Brown*, in which it is *acknowledged* that as persuasive a tribunal as the United States Supreme Court has held that "after [a criminal trial] acquittal collateral estoppel does not bar a subsequent civil action using a preponderance standard of proof." 503 Pa. at 520, 469 A.2d at 1374 (referring to *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232 (1972)). The *Brown* Court continued on, however, to declare that "[i]t is . . . questionable whether the Supreme Court would reach the same conclusion *where the subsequent proceeding is not a civil case, but rather a parole revocation matter involving a loss of liberty.*" 503 Pa. at 521, 469 A.2d at 1374 (emphasis added).

Indeed, it may be fairly well discerned from *Brown* that the concern with an individual's deprivation of liberty, inherent in revocation of parole, is to prevail over the traditional prejudice against applying collateral estoppel in a later proceeding in which the burden of proof is of a lesser degree. This is evidenced in the quoted material in the foregoing paragraph, but is also discernible in the Court's rejection of the Commonwealth's argument that collateral estoppel should not apply in the probation context because the purposes sought to be achieved in that realm and at the criminal trial are different:

> Closer scrutiny of this argument reveals its weakness. *In both proceedings the sanction of loss of liberty is involved.*
>
> . . . .
>
> Most important is that it must be remembered *parole* and probation as well as the criminal trial fall under the penumbra of the criminal justice system. . . . [T]o suggest that the policies of one . . . seek a purpose inimical to the policies of the others misconstrues the relationship of the various components among themselves.

*Id.* at 526, 469 A.2d at 1376, 1377 (emphasis added).

With respect to differing burdens and the operation of collateral estoppel, *see* Zuckerman, *Revocation of Conditional Liberty*

tal in criminal court may preclude the Board from revoking . . . parole." *Nickens v. Pennsylvania Board of Probation and Parole,* 93 Pa. Commonwealth Ct. 313, 319 n. 10, 502 A.2d 277, 279 n. 10 (1985). *Cf. Brantley v. Pennsylvania Board of Probation and Parole,* 95 Pa. Commonwealth Ct. 641, 647, 506 A.2d 970, 973 (1986) ("We [have] reasoned that for collateral estoppel to apply, the ultimate issues in the criminal trial must be identical to [the] issue or issues sought to be precluded from consideration at the parole revocation hearing.").[5] In the present case, we conclude that precisely the same issue of fact *was* resolved against the Commonwealth by the jury in the criminal prosecution. Thus, in consonance with our foregoing pronouncements, and attentive to recent indication from our Supreme Court that *Brown* does apply in the parole context,[6] we must reverse the Board's revocation.

---

*Following an Acquittal: Collateral Estoppel Implications,* 10 New England Journal On Criminal and Civil Confinement 215, 232-38 (1984); Note, *Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations,* 74 Mich. L. Rev. 525, 527 & n. 13 (1976). *See also* Thau, *Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation,* 70 Geo. L.J. 1079, 1079 n. 2 (1982) (stating traditional rule).

[5] *See also Hawkins,* 88 Pa. Commonwealth Ct. at 556, 490 A.2d at 948 (because elements of technical parole violation were not same as involved criminal charge, "collateral estoppel principles outlined in *Brown* are not applicable *to this case.* . . .") (emphasis added).

[6] In *Murray v. Patton,* No. 17 M.D. Misc. Dkt. 1984, filed September 24, 1984, the Supreme Court granted a petition for writ of habeas corpus sought by a parolee whose parole had been revoked notwithstanding a jury's acquittal of him on criminal charges based upon the same illicit conduct. In *Murray,* the acquittal followed prosecution on the charge of possession of a controlled substance. The parole revocation hearing convened thereafter was

Of the four elements required to coalesce before collateral estoppel will apply,[7] of importance in the present case is whether the issue sought to be re-litigated was actually the same. Because petitioner here succeeded in his alibi defense—the same situation as in *Brown*—there is strong indication that the jury in its acquittal simply found incredible Robinson's identification of petitioner as his assailant, and, instead, believed petitioner's testimony. In this respect we note our Supreme Court's conclusion concerning an acquittal following assertion of such a defense:

> In this matter at the trial of the criminal charge the appellant defended on the ground of alibi. The defense at trial produced evidence to establish that he was elsewhere at the time of the alleged robbery. There was no dispute that a robbery of the victim had occurred. *Thus the only rational explanation to be drawn from the general verdict of acquittal was that the jury concluded that appellant did not participate in the criminal act of robbing the victim.*

*Brown*, 503 Pa. at 519, 469 A.2d at 1373 (emphasis added). In addition, our own examination of the trial transcript reveals to us no other "rational explanation" for the jury's acquittal.[8] While in the present case the

---

premised on violation of the parole condition that the parolee abstain from the unlawful possession of narcotics. The parolee in his petition argued that the acquittal necessarily indicated that the jury had concluded that he was not in possession of the illicit substance, and hence that the principles of collateral estoppel, as announced in *Brown*, precluded re-litigation of the issue at the parole hearing. The Supreme Court, invoking *Brown*, thereafter granted the petition.

[7] *See Nickens*, 93 Pa. Commonwealth Ct. at 313, 502 A.2d at 279.

[8] We do not, of course, *take for granted* that the general verdict of acquittal was due to the jury's belief of petitioner's alibi. That conclusion can only follow an examination of the record "of the prior

defense evidence. was limited to petitioner's own testimony with respect to his whereabouts, petitioner's exclusive defense was, in the end, one of alibi. We thus follow the Supreme Court's reasoning and infer from the acquittal that the jury concluded that petitioner did not return to the bar and did not shoot Robinson.

Also as in *Brown,* it is "beyond dispute on [the] record that the sole basis offered by the Commonwealth to support its request for the revocation" was the possession of firearms and the engaging in of assaultive behavior, parole condition violations stemming from precisely the same criminal conduct "for which [petitioner] had previously been tried and acquitted." 503 Pa. at 519, 469 A.2d at 1373. This ineluctably leads to the conclusion that the Board has re-decided "an issue of ultimate fact that has previously been litigated and [decided] adversely to the Commonwealth." *Id.* Under the facts of the present case, the Board must be collaterally estopped from doing so.

Our holding, as we have stated, was foreshadowed in *Hawkins, Nickens,* and *Brantley.* We nonetheless emphasize, however, that none of those cases are deprived of their practical significance by our present holding. In each of the former instances the issue re-litigated in the course of the parole revocation hearing was different from that dealt with in the criminal proceeding. In *Hawkins,* similarity of issues was absent because "the *elements* of a technical parole violation involving [the condition that the parolee not possess a firearm or other weapon]" *were not the same* as those which had to be proven to establish a violation of the criminal statute in

---

proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Ashe v. Swenson,* 397 U.S. 436, 444 (1970), with the focus on "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id. Cf. Brown,* 503 Pa. at 519, 469 A.2d at 1373 (Court citing *Ashe* with approval).

question. 88 Pa. Commonwealth Ct. at 554, 490 A.2d at 946 (emphasis added). Precisely the same dissimilarity prompted our conclusion in *Nickens* that collateral estoppel would not apply. 93 Pa. Commonwealth Ct. at 319-20, 502 A.2d at 279-80 ("We . . . hold that the *elements* required to be proven in a prosecution for possession of a Prohibited Offensive Weapon *are not the same* as those required to prove a violation of [the parole condition that the parolee refrain from carrying or possessing any firearms or other weapons].") (Emphasis added.) In *Brantley,* similarly, we held that collateral estoppel would not apply because the "elements which must be proven by the Commonwealth regarding [the crime of Possession of Instruments of Crime (Generally)] are *different* from those the Board" was required to prove in establishing a violation of the parole condition that "firearms or other weapons" not be possessed. 95 Pa. Commonwealth Ct. at 649, 506 A.2d at 974 (emphasis added).

Because our holding is premised on state law, we need not address petitioner's assertion that failure to apply collateral estoppel in the present case violated his double jeopardy rights[9] under the coextensive protections of the United States and Pennsylvania Constitutions.

Reversed.

### ORDER

NOW, June 27, 1986, the order of the Pennsylvania Board of Probation and Parole at Parole No. 5078-H, dated December 19, 1984, which denied administrative relief to Curtis Boswell, is reversed.

---

[9] *See generally* Zuckerman, *supra* note 4, at 227-32.

396

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

In my opinion, *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983) must be limited to *probation* revocation hearings where, for the first time, the individual's personal liberty is at stake. I believe that that fact is what triggers the application of the penumbra of constitutional rights afforded to the petitioner in that case. In parole revocation hearings, of course, that fact is not present and for that reason we have held that prisoners are entitled to some but not all constitutional rights afforded to those who are not imprisoned.

The Court has always maintained that parole revocation hearings are civil in nature. In civil cases, the burden upon the party with the burden of proof is to make out its case by the preponderance of the evidence. In administrative agency appeals our own scope of review is to determine whether substantial evidence is present to support findings made by the agency.

In criminal cases, the burden is upon the Commonwealth to prove its case beyond a reasonable doubt. A verdict of acquittal in a criminal case does not mean that the defendant is innocent; it means only that the Commonwealth failed to meet its burden of proof. In a criminal case the defendant comes into court clothed with a presumption of innocence; there is no such presumption for the prisoner in a parole revocation case.

In my view, it is entirely within the realm of reason and consonant with applicable principles of law to permit the Board of Parole to reach a conclusion different from that of a jury or trial judge in a criminal case involving the same person and the same factual issues.

In summary, I think we tread on dangerous ground when we apply the principles of collateral estoppel to parole revocation cases solely on the basis of an acquittal in the criminal courts.