561 A.2d 362

**Samuel S. LYNESS, M.D., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1989.

Decided June 29, 1989.

Petition for Allowance of Appeal Denied March 29, 1990.

Jean B. Green, Donald J. Martin, Norristown, for petitioner.

John F. Alcorn, Counsel, State Bd. of Medicine, Joyce McKeever, Chief Counsel, and Velma A. Boozer, Chief Counsel, Dept. of State, Bureau of Professional & Occupational Affairs, Harrisburg, for respondent.

Before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

McGINLEY, Judge.

Samuel S. Lyness, M.D. (Lyness), appeals from a decision of the State Board of Medicine (Board) finding that Lyness committed acts constituting immoral and unprofessional conduct in violation of Section 15(a)(8) of the Medical Practice Act of 1974 (1974 Act)[1] and revoking his license to practice medicine. We vacate and remand.

On January 9, 1985 the prosecuting attorney for the Board initiated charges against Lyness by means of an administrative complaint and order to show cause, alleging that Lyness had committed an act of immoral or unprofessional conduct in November, 1984. Lyness filed an answer denying this allegation. The prosecuting attorney filed an amended complaint and order to show cause on February 22, 1985, and a second amended complaint and order to show cause on August 30, 1985. The second amended complaint and order to show cause set forth the same charges as did the original and also charged Lyness with additional acts of misconduct.

Lyness filed an answer and new matter denying the allegations and raising the bar of laches as to Counts II, III, VI, VII and VIII. He also requested therein that the Board suspend proceedings during the pendency of criminal charges which were based on the same incidents which formed the basis of Counts I and IV. A hearing examiner for the Board heard testimony, but this Court, acting on Lyness' request, agreed to stay the proceedings pending

---

[1]. Act of July 20, 1974, P.L. 551, *as amended, formerly* 63 P.S. § 421.15(a)(8), repealed and replaced by Section 41(8) of the Medical Practice Act of 1985 (1985 Act), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.41(8).

disposition of the criminal charges. After Lyness was acquitted of the criminal charges he filed an amended answer and new matter to the second amended complaint and order to show cause, in which he asserted that he had been acquitted of criminal charges which had been based on the same incidents which were the subject of Counts I and IV. He alleged that the acquittals barred the Board from proceeding on Counts I and IV.

The proceedings before the Board's hearing examiner resumed. The hearing examiner issued an Adjudication and Order, finding Lyness guilty of immoral and unprofessional conduct as charged in each of Counts I, II, III, VI, VII and VIII, and finding that he had violated Section 15(a)(8) of the 1974 Act. He ordered that Lyness' license to practice medicine be suspended for a period of five years, and that he submit to the "care, counselling or treatment of a physician or physicians designated by the Board." [2]

Both Lyness and the prosecuting attorney requested review by the Board. Lyness raised several contentions of error, and he requested that the Board hold an evidentiary hearing, and permit the filing of briefs and oral argument. The prosecuting attorney requested that the Board impose a harsher sentence. The Board denied Lyness' request for oral argument and an evidentiary hearing, but did establish a briefing schedule. The Board vacated the order of the hearing examiner, granted the prosecutor's request, and revoked Lyness' license.

Lyness raises the following contentions of error: 1) the Board commingled its prosecutorial and adjudicatory functions; 2) the proceedings were terminated by the repeal without savings clause of the 1974 Act; 3) the proceedings as to Counts II, III, IV, VI, VII and VIII were barred by application of laches; 4) the Board failed to apply the "beyond a reasonable doubt" standard; 5) the board erroneously denied oral argument and a new hearing; 6) the acquittal of the criminal charges estopped the Board from

2. Decision and Order of the Hearing Examiner, June 22, 1987, at 5, 18–19, Reproduced Record (R.R.) at 51a, 64–65a.

proceeding as to Count I; and 7) the modification of penalty was improper.

Our scope of review is limited to a determination of whether constitutional rights were violated, and whether the decision is in accordance with law and supported by substantial evidence. *Cassella v. State Board of Medicine*, 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988).

We first address Lyness' contention that the procedure which the Board followed violated due process. He specifically claims that the Board improperly commingled its prosecutorial and adjudicatory functions by permitting Board members, who voted to issue the complaint against him and to proceed to formal hearing, to serve on the tribunal which adjudicated those same charges.

The Board followed its standard operating procedure in prosecuting and adjudicating this matter.[3] A complaint was submitted to the Complaints Officer for the Bureau of Professional and Occupational Affairs. The complaint was then transmitted to a Board prosecutor, who conducted an investigation. The prosecutor recommended that a complaint be issued and a formal hearing be held, and the Board voted to accept the recommendation. The prosecutor then prepared an administrative complaint and order to show cause.

This Court upheld the constitutionality of a similar procedure in *Oppenheim v. Department of State, Bureau of Professional and Occupational Affairs, State Dental Council and Examining Board*, 74 Pa.Commonwealth Ct. 200, 459 A.2d 1308 (1983). Lyness suggests, however, that our decision in *Oppenheim* failed to follow the principles as set forth by our Supreme Court in *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975). Lyness also contends that the presence of actual bias distinguishes this controversy from *Oppenheim*.

**3.** The complaint process of the Board as it operated during the period relevant to these proceedings was set forth at 49 Pa.Code § 17.252, and is recodified at 49 Pa.Code § 16.62.

We reject Lyness' contention that our decision in *Oppenheim* misapplied the *Dussia* standard. In *Oppenheim,* as here, the appellant relied on *Dussia* to support his claim that his due process rights were violated. We dismissed that claim after a review of the pertinent authority from the United States Supreme Court, as well as our own Supreme Court, stating that:

> [O]ur court has recognized a fundamental distinction between the danger of conjoining prosecutorial and adjudicative functions in a single individual, and the danger of commingling such functions in an administrative structure statutorily designed. Thus, as a general rule, a decision made by a tribunal after a formal adversarial hearing, where that tribunal has generally supervised an investigation into the same matter previously, *or made a prehearing determination of probable cause is not per se an adjudication rendered by a biased tribunal, as long as the prosecutorial and investigatory aspects of the matter are adequately separated from the adjudicatory function ... In such cases, a party claiming due process violations must show actual bias....*
>
> The *Dussia* standard applies only when a single individual commingles prosecutorial and judicial functions; in such cases, the mere appearance of possible prejudice renders the adjudication unconstitutional.

*Oppenheim,* 74 Pa.Commonwealth Ct. at 214–15, 459 A.2d at 1316 (citations omitted and emphasis added).

In *Scalzi v. City of Altoona,* 111 Pa.Commonwealth Ct. 479, 533 A.2d 1150 (1987), we had occasion to review both *Dussia* and *Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969). We noted that each of these cases involved a review of the role of a single individual. Thus, Lyness' reliance on *Dussia* and *Gardner* is unfounded.

For Lyness to prevail he must show actual bias. Lyness points to two actions of the Board which he contends demonstrate bias: 1) the Board denied Lyness' application for stay of the order of the Hearing Examiner suspending his license; and 2) the Board ordered Lyness to

submit a plan for treatment. Lyness contends that the denial of his application for stay indicates that the Board had already determined that he was unlikely to prevail on the merits. He further contends that the Board's order that he submit a plan for treatment reflected the Board's predetermination of Lyness' guilt.

We disagree. A determination of whether or not the applicant is likely to prevail on the merits is only one of the criteria to be considered relative to an application for a stay. Other factors must be weighed, too, such as whether the applicant will suffer irreparable injury if the stay is denied; whether the issuance of a stay will substantially harm other interested parties; and whether the issuance of a stay will adversely affect the public interest. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983). The Board concluded that Lyness did not satisfy these criteria.[4] Lyness has made no showing that the Board committed an error of law or an abuse of discretion in denying his application for a stay, or that any such error of law or abuse of discretion was premised on bias. Nor has he shown that the Board's order requiring him to submit a treatment plan is an indication of bias. Having denied Lyness' application for stay, it was incumbent upon the Board to take action to put into effect the Hearing Examiner's order, including the provision which required Lyness to undergo treatment.[5]

We next address Lyness' contention that the proceedings against him should have been terminated due to the repeal without a savings clause of the 1974 Act, which had been in effect at the time of the alleged violations, and pursuant to which the proceedings against him were commenced. Lyness maintains that the inclusion in the 1985 Act of harsher penalties than were permitted in the 1974 Act[6] constitutes a substantial difference between the 1974

4. Board's order, July 29, 1987, R.R. at 78a.

5. Board's order September 23, 1987, R.R. at 83a.

6. Section 15(b)(2) of the 1974 Act, *formerly* 63 P.S. § 421.15(b)(2) permitted the Board to impose a private or a public reprimand.

and 1985 Acts, such that the proceedings against him must be terminated.

Our decision in *Gangewere v. Pennsylvania State Architects Licensure Board*, 98 Pa.Commonwealth Ct. 613, 512 A.2d 1301 (1986) negates Lyness' argument. In that case we addressed a similar issue, that being whether the Pennsylvania State Architects Licensure Board (Architects Board) erred in suspending the petitioner's license pursuant to Section 11 of the Architects Law [7] when that law was replaced and repealed by the Architects Licensure Law prior to the issuance of the citation against him.

Our analysis therein was guided by Section 1962 of the Statutory Construction Act, 1 Pa. C.S. § 1962, and our Supreme Court's decision in *In re Dandridge*, 462 Pa. 67, 337 A.2d 885 (1975). Section 1962 of the Statutory Construction Act states as follows:

> Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced.

In *Gangewere* we compared the prohibited conduct and penalty provisions in both the Architect's Law and the Architects Licensure Law and we determined that there was a substantial identity between the conduct which was proscribed by each statute and the penalty provisions which were contained in each statute. The similarity of these provisions led us to conclude that the Architect's Board had authority to sanction the petitioner for conduct which occurred when the former law was in effect because the

Section 42(a)(2) of the 1985 Act, 63 P.S. 422.42(a)(2) permits only a public reprimand. Under Section 15(b)(6) of the 1974 Act, *formerly* 63 P.S. § 421.15(b)(6), the Board was authorized to restore or reissue a license, even a revoked license. Under Section 43 of the 1985 Act, 63 P.S. § 422.43, the Board is prohibited from restoring a revoked license and prohibits reapplication by the licensee for five years.

7. Act of July 12, 1919, P.L. 933, *as amended, formerly* 63 P.S. § 26, repealed and replaced by Section 19 of the Architects Licensure Law, Act of December 14, 1982, P.L. 1227, *as amended,* 63 P.S. § 34.19.

standard proscribing the conduct was "carried forward without interruption by the later enactment." *Gangewere,* 98 Pa.Commonwealth Ct. at 619, 512 A.2d at 1305. This analysis followed the Supreme Court's reasoning in *In re Dandridge,* in which the Supreme Court applied Section 1962 of the Statutory Construction Act. The Court stated that:

> [E]ven though a statute is repealed, if some or all of its provisions are reenacted so that the conduct prohibited in the first statute remains censured by the reenactment, there is nothing which interferes with the power of the State to prosecute the matter without interruption.

*Dandridge,* 462 Pa. at 74, 337 A.2d at 889.

We reach a similar conclusion. Lyness concedes that there is a similarity between the conduct which he was accused of committing in violation of the 1974 Act and the conduct which is proscribed under the 1985 Act. Section 15(a)(8) of the 1974 Act, *formerly* 63 P.S. § 421.15(a)(8) provided that:

> (a) The Board shall have authority to refuse, revoke or suspend the license of a physician for any or all the following reasons:
>
> .     .     .     .     .
>
> (8) Being guilty of immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing medical practice, in which proceeding actual injury to a patient need not be established.

Section 41(8) of the 1985 Act, 63 P.S. § 422.41(8), states that:

> The Board shall have the authority to impose disciplinary or corrective measures on a Board-regulated practitioner for all of the following reasons:
>
> .     .     .     .     .
>
> (8) Being guilty of immoral or unprofessional conduct. Unprofessional conduct shall include departure from or failing to conform to an ethical or quality standard of the

profession. In proceedings based on this paragraph, actual injury to a patient need not be established.

Lyness points out, however, that the penalties in the 1985 Act are harsher than the penalties which were contained in the 1974 Act. Thus, he argues that due to the disparity in the severity of the penalties, the 1985 Act may not be considered a substantial reenactment of the 1974 Act. He contends that the primary distinction is between the Board's discretion under the 1974 Act to restore or reissue any license at any time [8], and the five year ban on reinstatement of a revoked license under the 1985 Act.[9]

A similar disparity existed in *Gangewere* between the penalty provisions of the Architects Law and the Architects Licensure Law. In the Architects Law the Architects Board had discretion to restore or renew any license at any time [10], whereas the Architects Licensure Law prohibited reinstatement of a revoked license for five years.[11] This difference in the penalty provisions was not a controlling factor. We focused instead on the fact that the petitioner's conduct would be grounds for revocation or suspension of his license under both statutes. Applying this reasoning to the instant matter, we conclude that the repeal of the 1974 Act by the 1985 Act did not terminate the Board's authority to proceed against Lyness pursuant to the 1974 Act.

■ Lyness next contends that the Board erred by failing to apply the "beyond a reasonable doubt" standard. None of the cases on which he relies have established this standard of review for disciplinary proceedings before licensing boards.

■ Lyness also maintains that the Board violated his due process rights by refusing to hear oral argument and by refusing to hold an evidentiary hearing. The decision concerning whether or not to hear oral testimony or to hold

8. Section 15(b)(6) of the 1974 Act, *formerly* 63 P.S. § 421.15(b)(6).
9. Section 43 of the 1985 Act, 63 P.S. § 422.43.
10. Section 11 of the Architects Law, *formerly* 63 P.S. § 26.
11. Section 19(c) of the Architects Licensure Law, 63 P.S. § 34.19(c).

an evidentiary hearing rests within the discretion of the Board.[12] In *Herberg v. State Board of Medical Education and Licensure*, 65 Pa. Commonwealth Ct. 358, 442 A.2d 411 (1982), this Court held that the Board did not abuse its discretion in failing to admit additional testimony where the record revealed that the petitioner was given a full opportunity to present evidence and legal arguments before the hearing examiner. The record in the matter presently before this Court reflects that Lyness was given a similar opportunity before the Hearing Examiner, and he makes no allegations to the contrary. The record of the matter was sufficiently complete for the Board to conduct a proper review. The Board did not abuse its discretion in refusing to hear oral argument or additional evidence.

■ Lyness next contends that his acquittal of criminal charges collaterally estopped the Board from imposing discipline with respect to Count I. Lyness cites two cases in support of this proposition, *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983), and *Boswell v. Pennsylvania Board of Probation and Parole*, 98 Pa.Commonwealth Ct. 386, 512 A.2d 66 (1986). These cases held that collateral estoppel barred the Pennsylvania Board of Probation and Parole from revoking probation or recommitting a parolee, respectively, as a result of conduct which had been basis of a criminal charge, where the individual was acquitted of the criminal charge. The present case is distinguishable from those two cases.

In *Brown*, the Supreme Court held that an acquittal on an underlying criminal offense will bar a finding of a probation

---

**12.** *See* Section 905 of the 1974 Act, 40 P.S. § 1301.905(a):

If application for review is made to the State Board of Medical Education and Licensure ...the State Board of Medical Education and Licensure ...shall review the evidence, *and if deemed advisable by the board, hear argument and additional evidence.* (Emphasis added.)

*See also* 49 Pa.Code § 16.81(a):

The Board will review the evidence and, *if it deems it advisable, may hear additional testimony* from persons already deposed or from new witnesses and *arguments of counsel* to make a Board decision. (Emphasis added.)

violation based on conduct that was the subject of the criminal prosecution where there is an identity of the issues. The Court reached this decision despite the different standards of proof in the two matters (*i.e.*, "beyond a reasonable doubt" and "preponderance of the evidence"). In *Boswell* we extended the *Brown* ruling to parole violations.[13] In *Boswell* we explained the distinction made in *Brown* between the application of collateral estoppel, due to a criminal acquittal, in probation hearings, and its non-application in other civil proceedings. We stated:

> Notoriously—and properly—absent from our prior distinguishing [between the application of collateral estoppel in probation violation hearings and its non-application in parole violation hearings], however, is the obvious fact that the burden of proof required of the Commonwealth is markedly different in the criminal context and that of probation/parole revocation. In the former realm, proof of commission of the crime must be established beyond a reasonable doubt, while in the latter proof of a violation need only be supported by a preponderance of the evidence.... In Brown the Supreme Court "reject[ed] the suggestion that the difference in burden of proof is

**13.** In *Wallace v. Pennsylvania Board of Probation and Parole,* 119 Pa.Commonwealth Ct. 508, 548 A.2d 1291 (1988), we noted that the extension of *Brown* to the parole revocation proceedings in *Boswell* was limited to that factual situation:

> In *Hawkins v. Pennsylvania Board of Probation and Parole,* 88 Pa.Commonwealth Ct. 547, 490 A.2d 942 (1985), we held that the principle of collateral estoppel as set forth in *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), does not apply to Board revocation proceedings, since the technical conditions of parole cover a wider range of conduct than the related provisions of the Crimes Code. Consequently, it is permissible to recommit a parolee as a technical parole violator for conduct that was also the subject of criminal prosecution where the parolee was acquitted if there is no identity of the issues. Hawkins. The only exception so far to this rule is where a parolee's only defense at the criminal trial is alibi and he or she is acquitted. There, a parolee cannot be recommitted as a technical parole violator for conduct which was the subject of the criminal charges because the fact finder would have had to find that he was not present at the crime scene. *Boswell v. Pennsylvania Board of Probation and Parole,* 98 Pa.Commonwealth Ct. 386, 512 A.2d 66 (1986).

*Wallace,* 119 Pa.Commonwealth Ct. at 512–13, 548 A.2d at 1294.

conclusive upon the question" of the application of collateral estoppel.   503 Pa. at 523, 469 A.2d at 1373–74. Although articulated in the context of probation, we find this rejection to necessarily embrace the lesser burden of proof demand in the realm of parole.

That this was in fact the intent of our Supreme Court is most evident in Brown, in which it is *acknowledged* that as persuasive a tribunal as the United States Supreme Court has held that "after [a criminal trial] acquittal collateral estoppel does not bar a subsequent civil action using a preponderance standard of proof."   503 Pa. at 520, 469 A.2d at 1374 (referring to *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232 [93 S.Ct. 489, 34 L.Ed.2d 438] (1972)).   The Brown Court continued on, however, to declare that "[i]t is ... questionable whether the Supreme Court would reach the same conclusion *where the subsequent proceeding is not a civil case, but rather a parole revocation matter involving a loss of liberty.*"   503 Pa. at 521, 469 A.2d at 1374 (emphasis added).

Indeed, it may be fairly well discerned from Brown that the concern with an individual's deprivation of liberty, inherent in revocation of parole, is to prevail over the traditional prejudice against applying collateral estoppel in a later proceeding in which the burden of proof is of a lesser degree.   This is evidenced in the quoted material in the foregoing paragraph, but is also discernible in the Court's rejection of the Commonwealth's argument that collateral estoppel should not apply in the probation context because the purposes sought to be achieved in that realm and at the criminal trial are different:

> Closer scrutiny of this argument reveals its weakness. *In both proceedings the sanction of loss of liberty is involved.*
>
> .     .     .     .     .
>
> Most important is that it must be remembered *parole* and probation as well as the criminal trial fall under the penumbra of the criminal justice system.... [T]o sug-

gest that the policies of one ... seek a purpose inimical to the policies of the others misconstrues the relationship of the various components among themselves. *Boswell*, 98 Pa.Commonwealth Ct. at 390–91, n. 4, A.2d 512 at 68, n. 4 (citing *Brown*, 503 Pa. at 526, 469 A.2d at 1376–77) (emphasis in original).

Clearly, *Brown* and *Boswell* do not support the application of collateral estoppel, following an acquittal on criminal charges, in a disciplinary proceeding before a licensing board. First, the differing standards of proof, *i.e.*, the "beyond a reasonable doubt" standard in the criminal proceedings versus the "preponderance of the evidence" standard in the licensing board proceedings, prevents an identity of the issues. Whereas the difference in the standards of proof did not foreclose the application of collateral estoppel in *Brown* and *Boswell*, the same constraints are not present in this matter. The licensing board proceedings do not involve the possibility of a loss of liberty; neither do they fall under the "penumbra of the criminal justice system." Thus, we may consider the different standards of proof in determining whether there is an identity of the issues to be decided in the criminal trial and the disciplinary proceedings. The different standards of proof *do* cause a lack of identity of the issues.

There is a second reason why there is not an identity of the issues. In the present proceedings, the Board concerned itself with whether or not Lyness was guilty of immoral or unprofessional conduct. Clearly, he may be guilty of such conduct, and yet *not* be guilty of a criminal offense. Accordingly, we reject the notion that Lyness' acquittal of the criminal charge should bar these proceedings.

■ Lyness next contends that the Board is estopped from proceeding on Counts II, III, IV, VI, VII, and VIII. He claims that the passage of time prevented him from defending himself against these charges, based on lack of witnesses, and memory lapses. With respect to these counts, the victims did not report these incidents to the

Board until several years after they allegedly occurred, and only after they had learned of the incident which formed the basis of the first count. Board's Brief at 23.

In *Weinberg v. State Board of Examiners of Public Accountants*, 509 Pa. 143, 501 A.2d 239 (1985) the Supreme Court held that the equitable doctrine of laches can be asserted against the Commonwealth in a disciplinary proceeding before a licensing board, although the Court stated that: "[T]he courts will be generally reluctant to apply the doctrine against the government and will require a stronger showing by a defendant who attempts to apply the doctrine against the Commonwealth than by one who would apply it against an individual." *Id.*, 509 Pa. at 150, 501 A.2d at 243.

The Court set forth the elements of this defense as follows:

> Thus, it is clear that the application of the defense of laches requires not only an unjustified delay, but also that the opposing party's position or rights be prejudiced as a result of that delay.... Moreover, [t]he question of laches is factual and is determined by examining circumstances of each case.

*Id.*, 509 Pa. at 148, 501 A.2d at 242. The Court further stated that "the defense of laches is an affirmative defense and the burden of proving laches is, therefore, on the defendant/respondent." *Id.*

Although the complaints against Lyness were initiated by his alleged victims, the disciplinary action itself was commenced by the Board. Lyness does not allege that the Board lacked due diligence in commencing the disciplinary proceedings. Instead, he contends that the proceedings should be barred due to the lack of due diligence exhibited by all but one of the alleged victims who failed to report the incidents to the Board until years after they were alleged to have occurred.[14] Lyness contends that because the purpose of laches is to prevent injustice and to discourage the

14. The conduct complained of in the oldest complaint occurred in 1976, nine years earlier. Other incidents were alleged to have occurred in 1976, 1978, 1979, 1980, and 1981.

bringing of stale claims, it is sufficient for him to prove unreasonable delay on the part of the complainants, and he does not need to prove that the Board itself was guilty of a lack of due diligence.

Lyness relies upon the case of *Appeal of Plantier*, 126 N.H. 500, 494 A.2d 270 (1985), in support of his claim that the undue delay need not be attributable to the Board. In that case two complainants alleged that a physician had committed acts of sexual abuse, one act allegedly having occurred nine years earlier, and the other act allegedly having occurred four years earlier. The Court held that the nine year old charge was stale, finding both unjust delay on the part of the complainant in reporting the charge and prejudice to the physician due to his inability to recall the incident. Because the lower tribunal had considered both charges at the same time, the Court reversed and remanded for a separate hearing on the four year old charge.

This issue concerning whether the requisite lack of due diligence must be attributable to the Board or whether it may be attributable to a non-Commonwealth party is a matter of first impression in this Commonwealth. The Supreme Court in *Weinberg* did not address this specific issue, although the Court referred to the need of the *complaining party* to exercise due diligence in *instituting his cause of action:*

> The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence *in failing to institute his action* to another's prejudice.

*Id.*, 509 Pa. at 148, 501 A.2d at 242. (Emphasis added.)

We are persuaded that in applying the equitable doctrine of laches in a disciplinary proceeding, the requirement of undue delay may be fulfilled by proving that a victim unjustifiably delayed in reporting an incident to the Board. Equity requires such a result. An accused may be as prejudiced by a delay which is attributable to an alleged

victim as by a delay which is attributable to the Board. Were we to decide this issue elsewise there would be no limitation to the length of time between the occurrence of an alleged violation of a professional licensing act and the commencement of disciplinary proceedings.[15]

We have thus determined that laches may bar these proceedings if Lyness proved that he was prejudiced by the undue delay of his alleged victims in reporting the incidents to the Board. As the Court in *Weinberg* declared, "the question of laches is factual and is determined by examining circumstances of each case." *Id.*, 509 Pa. at 148, 501 A.2d at 242. It is not this Court's role, but rather it is the role of the Board as fact finder, to determine whether Lyness proved that the alleged victims unreasonably delayed in filing their complaints, and whether he was prejudiced by any such delay. The Board did not make these factual determinations; thus, we must remand in order to give the Board an opportunity to do so.

■ The final two issues which Lyness raises address the modification of the penalty which was originally imposed by the hearing examiner. Lyness maintains that the prosecuting attorney did not have authority to appeal to the Board for a review of the hearing examiner's decision. We recently held in *Cassella*, 119 Pa.Commonwealth Ct. at 404–07, 547 A.2d at 511, that such an appeal is proper.

Lyness also contends that the penalty provisions in the 1985 Act are harsher than the penalty provisions in the 1974 Act, and that, because of the greater severity of punishment, the 1985 Act is an unconstitutional ex post facto law. Due to our decision above to remand this matter, we will not address this last contention. The Board indicated in its

15. We note that there are limitations with respect to the time within which civil actions and criminal proceedings may be commenced. *See* generally, Sections 5501–5536 of the Judicial Code, 42 Pa.C.S. §§ 5501–5536, and Sections 5552–5554 of the Judicial Code, 42 Pa.C.S. §§ 5552–5554. *See also Commonwealth v. Arnold,* 331 Pa.Superior Ct. 345, 480 A.2d 1066 (1984) (discussing the weighing of reasonable delay against prejudice to the defendant in criminal cases where the statute of limitations does not provide the necessary protection.)

decision that the number of violations was a major factor in its decision to revoke, instead of to suspend, Lyness' license.[16] Thus, should the Board dismiss some of the counts due to laches, such dismissal may effect a change in the penalty which the Board imposes.[17]

For the reasons stated above we vacate the decision of the Board and remand this matter to the Board for proceedings consistent with this opinion.

DOYLE, J., did not participate in the decision in this case.

## ORDER

AND NOW, this 29th day of June, 1989, the decision of the State Board of Medicine is vacated, and this case is remanded for proceedings consistent with the within opinion. Jurisdiction is relinquished.

CRUMLISH, Jr., President Judge.

I respectfully dissent.

**16.** The Board stated:

Petitioner in mitigation has presented evidence of his surgical skill and of his good character, however, this mitigation is outweighed by violations so serious. The number of incidents seriously troubles the Board. The Board cannot accept the practice of medicine within the Commonwealth by Petitioner. Protection of the public must be the Board's overriding concern.

Decision of the Board, June 22, 1987 at 36–37.

**17.** The Hearing Examiner enumerated the counts at which he found Lyness to be guilty of immoral and unprofessional conduct. Decision of the Hearing Examiner, June 22, 1987, at 5, R.R. at 51a. The Board, however, did not review each count on its own merits, although it did separately assess the credibility of each complainant. Instead the Board found "particularly persuasive the similarities of the occurrences, each of which tends to corroborate the other." Decision and order of the Board, March 22, 1988, at 35. The witnesses should not be viewed as corroborative of the others, and the Board should consider each count separately. Proof that a person has done an act on one occasion is not probative of the contention that he did a similar act upon another occasion. *Roney v. Clearfield County Grange Mut. Fire Ins. Co.*, 332 Pa. 447, 3 A.2d 365 (1939); L. Packel & A. Poulin, Pennsylvania Evidence § 405.3, at 181–82 (1987). The Board should identify the separate counts at which it finds Lyness to be guilty of immoral and unprofessional conduct.

As the majority notes, "[t]he Board followed its standard operating procedure in prosecuting and adjudicating this matter." (Footnote omitted). The majority also notes that the Board not only made the initial decision to issue a complaint against Lyness, but ultimately adjudicated that complaint by ordering, without an evidentiary hearing or oral argument, a harsher sanction than that imposed by the hearing examiner. Such involvement constitutes an impermissible commingling of prosecutorial and adjudicatory functions under *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975).

Thus, for the reasons more fully explained in my dissent in *Bruteyn Appeal*, 32 Pa.Commonwealth Ct. 541, 380 A.2d 497 (1977), I would reverse.

COLINS, J., joins in this dissent.