**Danny KYTE, Petitioner,**

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 17, 1996.

Decided July 1, 1996.

Mitchell A. Kaufman, Appellate Counsel, for petitioner.

Robert A. Greevy, Chief Counsel, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

PELLEGRINI, Judge.

Danny Kyte (Petitioner) petitions for review the order of the Pennsylvania Board of Probation and Parole (Board) recommitting him as a technical parole violator to serve 12 months backtime and denying administrative relief. We affirm.[1]

The facts of this case present a series of technical parole violations and recommitments as follows. Petitioner was originally sentenced on November 11, 1982, to a term of seven to fifteen years for the offense of robbery. Upon the expiration of his minimum sentence, he was paroled on November 11, 1989, with numerous special conditions,[2] including submitting to urinalysis and avoiding any alcohol. On April 23, 1990, Petitioner was recommitted as a technical parole violator to serve nine months backtime for violating the general condition 5A, use of a controlled substance. He was reparoled on November 23, 1990, with similar special conditions.

Petitioner was again recommitted on September 3, 1991, to serve 12 months backtime for violating multiple conditions of his parole, including failure to submit to urinalysis, failure to participate in a drug treatment pro-

gram and a summary conviction for disorderly conduct. He was reparoled on July 19, 1992. For the third time, on March 17, 1993, Petitioner was recommitted for six months of backtime for violating a special condition by being unsuccessfully discharged from the Halfway Back Program. He was reparoled on June 7, 1993, with the same special conditions concerning submission to urinalysis and avoiding alcohol.[3]

Finally, on June 30, 1994, Petitioner was arrested by his parole agent and charged with possession of an 8–inch lock blade knife. He was then charged with multiple violations of conditions of his parole: 3A—failure to report, 5B—refraining from owning or possessing any firearm or other weapon, and 7—failure to submit to urinalysis.[4] A hearing was held on September 11, 1994, wherein Petitioner admitted to violating conditions 3A and 7 of his parole. (Certified Record p. 60).

As to condition 5B, the Board presented the testimony of Petitioner's parole agent, Richard Novak, who testified that he received information that Petitioner was at an address, not his approved residence, that was a purported crackhouse. Arriving there with two police officers, the parole agent was admitted by someone inside and, after entering, saw Petitioner go into a bedroom. Petitioner was arrested and the parole agent testified that the bedroom was searched. The search revealed an 8–inch lock blade knife, drug paraphernalia and ammunition. The parole agent stated that the knife was found between the mattress and the boxspring of the bed.

To counter the parole agent's testimony, Petitioner presented the testimony of himself and two friends, Bryant Larkin and Stanley Owens. Petitioner testified that he had just arrived at Bryant Larkin's house when the parole agent showed up and arrested him. He stated that he never lived there nor was he in the bedroom. Owens testified that the

---

1. This case was originally submitted to a panel of judges but was directed for argument before the court *en banc* by order dated February 8, 1996.

2. 37 Pa.Code § 63.5.

3. Also, on July 21, 1993, Petitioner was charged with rape, terroristic threats and unlawful re-

straint and was detained. The case resulted in a *nolle prosequi* and the detainer was lifted.

4. The Board also initially charged Petitioner with a violation of condition 2 for changing his residence without approval; however, that charge was withdrawn at the hearing.

knife seized the night of Petitioner's arrest was his, and that he had been drinking the night before so either Petitioner or Larkin took the knife from him. Larkin also testified that Owens was playing with the knife and that someone took it from him the night before. Larkin stated that he did not take the knife from Owens, and that it might have been Petitioner or someone else.

The Board found that Petitioner's admissions established the violations of conditions 3A and 7. It also found that the testimony of Novak, the parole agent, and Petitioner's friends, Larkin and Owens, established a violation of 5B. The Board ordered recommitment as a technical parole violator to serve 12 months of backtime. Petitioner requested administrative relief from the Board. The Board denied administrative relief, holding that the facts as found by the Board established by a preponderance of the evidence that Petitioner violated the conditions of his parole. Petitioner then filed this appeal.[5]

▉▉▉ Petitioner contends that his parole agent conducted a warrantless search, and that the evidence found by the search, particularly, the knife, should not have been relied on by the Board.[6] Citing *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993), Petitioner argues that the knife found by the parole agent should have been excluded from evidence. However, Petitioner's reliance on *Pickron* is misplaced. In *Pickron*, a new criminal prosecution of a parolee, our Supreme Court held that the Fourth Amendment of the United States Constitution prohibits the warrantless search of probationer's or parolee's residence based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search. The Supreme Court held that the evidence found in the search must be suppressed in the criminal action against Pickron, because factually, neither consent nor a regulatory framework was present.[7] The decision in *Pickron* is completely inapplicable to this case because it excludes evidence in a criminal prosecution, whereas this is a parole revocation hearing, which is not a criminal proceeding.

Unlike in *Pickron*, where evidence was excludable in a new criminal case, it has long been held that the Fourth Amendment's exclusionary rule is not applicable to parole revocation procedures. *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); *Johnson v. Pennsylvania Board of Probation and Parole*, 107 Pa.Cmwlth. 183, 527 A.2d 1107 (1987); *Nickens v. Pennsylvania Board of Probation and Parole*, 93 Pa. Cmwlth. 313, 502 A.2d 277 (1985); *Zimmerman v. Pennsylvania Board of Probation and Parole*, 83 Pa.Cmwlth. 282, 476 A.2d 1016 (1984); *United States v. Bazzano*, 712 F.2d 826 (3rd Cir.1983).

In *Kates*, our Supreme Court analyzed the issue of whether the exclusionary rule applied to parole and probation proceedings as follows:

> Neither *Morrissey* [*v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ], nor any other decision that has come to our attention, requires that a revocation hearing be conducted with the same pro-

---

5. This court's scope of review of a Board's recommitment order is limited to determining whether necessary findings of fact are supported by substantial evidence and are in accordance with law, and whether any constitutional rights of the parolee have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Hawkins v. Pennsylvania Board of Probation and Parole*, 88 Pa.Cmwlth. 547, 490 A.2d 942 (1985). The Board has the burden of proving technical parole violations by a preponderance of the evidence. 37 Pa.Code § 71.2(19); *Hawkins*.

6. After this court ordered that this case be argued *en banc* in order to readdress our previous decision in *Scott v. Pennsylvania Board of Probation and Parole*, 668 A.2d 590 (Pa.Cmwlth.1995),

*petition for allowance of appeal granted*, —— Pa. ——, 676 A.2d 1203 (1996), the Board filed a supplementary brief raising for the first time the issue that Petitioner had waived his exclusionary rule argument. Because the Board failed to raise the issue of waiver when Petitioner raised the exclusionary rule in his request for administrative relief from the Board or when it filed its original briefs to this court, we deem the issue to be waived by the Board and will address the merits.

7. *See also Commonwealth v. Alexander*, 436 Pa.Superior Ct. 335, 647 A.2d 935 (1994) (it is not necessary for the parole agents to become "stalking horses", that is, searching for evidence of the commission of new crimes, for the holding in *Pickron* to apply). .

cedural and evidentiary rules as would apply to a trial on the criminal charges growing out of the same facts. In this area of rights of probationers and parolees the controlling factor is not whether the traditional rules of evidence or procedure including Fourth and Fifth Amendment exclusionary rules, have been strictly observed, but rather whether the probative value of the evidence has been affected.... In *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir.1970), the Court of Appeals in three separate and carefully considered opinions set down the policy behind holding that ordinary Fourth Amendment exclusionary rules are not applicable to revocation hearings. Judge Hays stated:

> "The exclusionary rule is believed to be a necessary restraint on the adversarial zeal of law enforcement officials. 'As it serves this function, the rule is a needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease.' Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U.Pa.L.Rev. 378, 389 (1964).

> .... A Parole revocation proceeding is concerned not only with protecting society, but also, and most importantly with rehabilitating and restoring to useful lives those placed in the custody of the Parole Board. To apply the exclusionary rule to parole revocation proceedings would tend to obstruct the parole system in accomplishing its remedial purposes.

> There is no need for double application of the exclusionary rule, using it first as it was used here in preventing criminal prosecution of the parolee and a second time at a parole revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution."

426 F.2d at 1163–1164 (footnotes omitted). To the same effect is *United States ex rel. Lombardino v. Heyd,* 318 F.Supp. 648 [651] (E.D.La.1970) [aff'd, 438 F.2d 1027 (5th Cir.1971), cert. denied, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971) ], which dealt with probation. There the court stated:

> "Expansion of the exclusionary rule to probation revocation hearings would in all likelihood further its laudable purpose of deterring unconstitutional methods of law enforcement. But the good to be obtained from such expansion must be balanced against the harm which will result due to the unique nature and purpose of the probation revocation hearing. If the rehabilitative function of the probation system is to be fostered, it seems imperative that the judge charged with the responsibility and discretion to grant, deny or revoke probation be fully aware of all the facts and circumstances in a particular case."

*Kates,* 452 Pa. at 118–120, 305 A.2d at 710. After this discussion of the purposes to be served by the exclusionary rule and by parole and probation revocation hearings, our Supreme Court stated:

> [T]his type of constitutional objection [a Fourth Amendment violation] does not preclude the evidence from being presented during a probation revocation hearing and does not form the basis of a denial of due process.

*Kates,* 452 Pa. at 121, 305 A.2d at 711. As a result, in *Johnson,* this court held:

> At the outset, we must reject petitioner's allegation that the board erred by not excluding as evidence petitioner's comments to his parole agent. It is well settled that the Fourth Amendment's exclusionary rule is not applicable to parole revocation hearings.

*Johnson,* 527 A.2d at 1108.

Although in *Knuckles v. Pennsylvania Board of Probation and Parole,* 111 Pa. Cmwlth. 487, 533 A.2d 1156, 1157 (1987), we stated that "the Fourth Amendment exclusionary rule is *generally* not applicable to parole violation hearings," (emphasis added), citing *Nickens,* the use of the word "generally" was a misstatement of the holding in *Nickens.* In *Nickens,* we held "the Fourth Amendment's exclusionary rule is not applicable to parole revocation procedures". *Nickens,* 502 A.2d at 281. *See also Coleman*

*v. Pennsylvania Board of Probation and Parole,* 101 Pa.Cmwlth. 144, 515 A.2d 1004 (1986).[8]

■ Petitioner also contends that even if the evidence is admitted, the finding of a violation of condition 5B is not supported by substantial evidence because there was no definite testimony that he had ever touched the knife. Petitioner argues that the testimony of Larkin and Owens establishes that the knife was Owens' and that someone had taken it from Owens the night before but not who had taken it. The Board argues that based on Owens' testimony, either Petitioner or Larkin had taken the knife from him and that Larkin testified that he did not take the knife. When the evidence is viewed together, there is substantial evidence for the Board's finding that Petitioner had possession of the knife. Accordingly, the Board met its burden of proving the technical parole violation of owning or possessing a weapon, condition 5B, by a preponderance of the evidence.

■ Moreover, even if the Board's findings on condition 5B were unsupported, the Board's recommitment order could be affirmed. The recommitment for 12 months is within the presumptive range for the violations of conditions 3A and 7, which Petitioner admitted violating. 37 Pa.Code § 75.4 (condition 3A is subject to three to six months; condition 7 subject to three to eighteen months). *See also* 37 Pa.Code § 75.3(e) (highest range used) and (f) (backtime aggregated for a special condition); *Lawson v. Pennsylvania Board of Probation and Parole,* 105 Pa.Cmwlth. 427, 524 A.2d 1053, 1057 (1987) (no remand necessary where recommitment within presumptive range of remaining technical parole violations, even though one violation held unsupported by the evidence).

## ORDER

AND NOW, this *1st* day of *July,* 1996, the order of the Pennsylvania Board of Probation and Parole, dated February 3, 1995, Parole No. 0078–S, denying administrative relief, is affirmed.

KELLEY, Judge, concurring and dissenting.

In the instant appeal, petitioner first contends that he was subjected to an unconstitutional search and the fruits of that search, particularly the knife, should not have been considered by the board in revoking his parole. However, my review of the certified record reveals that petitioner did not object to the admission of this evidence at his parole revocation hearing. As a result, petitioner has waived any claim he may have regarding the Board's consideration of this evidence. *See, e.g., Mangone v. Pennsylvania Board of Probation and Parole,* 123 Pa.Cmwlth. 34, 553 A.2d 91 (1988), *petition for allowance of appeal denied,* 522 Pa. 591, 561 A.2d 743 (1989); *Wallace v. Pennsylvania Board of Probation and Parole,* 119 Pa.Cmwlth. 508, 548 A.2d 1291 (1988); *Maxfield v. Pennsylvania Board of Probation and Parole,* 114 Pa.Cmwlth. 162, 538 A.2d 628 (1988); *Patton v. Pennsylvania Board of Probation and*

---

**8.** Recently, in *Scott, supra* n. 6, this court addressed the exclusion of evidence obtained when a parole supervisor conducted a warrantless search of a parolee's approved residence without the consent of the owner, the parolee's mother. Although recognizing that Pennsylvania courts (as well as a number of other states and federal courts) have refused to apply the exclusionary rule to parole revocation proceedings, the decision then applies a balancing of interests framework, which had been set forth by the United States Supreme Court to determine whether the exclusionary rule is applicable to other types of proceedings. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The opinion in *Scott* holds, by applying a balancing test, that the evidence obtained through the warrantless search should have been excluded and reversed the Board of Probation and Parole. The balancing test relied on in *Scott* has never been applied to the facts of a parole or probation case to determine if the exclusionary rule applies. To the contrary, in *Kates,* our Supreme Court applied the balancing test generally to determine if evidence should ever be excluded from parole and probation revocation hearings due to constitutional violations. *Kates* held that the exclusionary rule does not apply to the revocation hearings, as a matter of law. It reached this legal conclusion without any indication that a balancing test can be applied to the facts of each case. Accordingly, the decision in *Scott,* to the extent that it holds that a balancing test applies and that the evidence from the warrantless search should have been excluded from the parole revocation hearing, is hereby overruled.

*Parole,* 95 Pa.Cmwlth. 333, 505 A.2d 407 (1986).

In addition, in reviewing this claim on the merits, the majority overrules our panel decision in *Scott v. Pennsylvania Board of Probation and Parole,* 668 A.2d 590 (Pa.Cmwlth. 1995). However, on May 15, 1996, the Pennsylvania Supreme Court granted allowance of appeal in that case to address precisely the same issue which is considered by the majority in the instant appeal. *Scott v. Pennsylvania Board of Probation and Parole,* No. 2 M.D. Allocatur Docket, —— Pa. ——, 676 A.2d 1203, petition for allowance of appeal granted May 15, 1996.

Based on the foregoing, I believe it would be imprudent to consider the first claim raised by petitioner in this appeal for two reasons. Initially, I believe that this claim should not be addressed because it has not been properly preserved by petitioner for our review. Additionally, if it were appropriate to review this claim on the merits, its resolution would be controlled by the Pennsylvania Supreme Court's disposition of the identical claim in *Scott.* Therefore, I must dissent from that portion of the majority opinion which considers petitioner's initial claim on the merits, and purports to overrule our panel decision in *Scott.*

In this appeal, petitioner also contends that even if this improperly admitted evidence is considered, the Board's finding of a violation of parole condition 5B is not supported by substantial evidence. I agree with the majority that, when all of the evidence of record is reviewed, there is substantial evidence to support the Board's finding of a violation of petitioner's parole condition 5B. Therefore, I concur with the majority's determination that the Board's order denying petitioner's request for administrative relief must be affirmed.

SMITH and FRIEDMAN, JJ., join in this concurring and dissenting opinion.