**James CROMARTIE, Petitioner,**

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 22, 1996.
Decided July 1, 1996.

Ronald G. McNeil, for Petitioner.

Robert A. Greevy, Assistant Chief Counsel, for Respondent.

Before SMITH and PELLEGRINI, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.[1]

James Cromartie (Petitioner) petitions for review of the order of the Pennsylvania Board of Probation and Parole (Board) that denied Petitioner's request for administrative relief from the Board's order of July 21, 1995, which recommitted Petitioner as a technical parole violator to serve his unexpired term of one year, three months and three days.[2]

Petitioner was originally sentenced by a Philadelphia Common Pleas Court to serve a term of five to ten years for robbery, along with a concurrent sentence of two-and-a-half to five years for a related firearms offense. That sentence had a minimum expiration date of February 23, 1989, and a maximum expiration date of February 3, 1994. Petitioner was paroled on October 13, 1989. He was subsequently recommitted for nine months as a technical and convicted parole violator and his recomputed maximum expiration date was July 24, 1996.

On December 28, 1994, Petitioner was arrested by the Philadelphia police for possession of a firearm in violation of Sections 6106 and 6108 of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. §§ 6106 and 6108.[3] On December 29, 1994, the Board lodged a warrant to detain Petitioner pending disposition of criminal charges. On January 26, 1995, a detention hearing was held and probable cause was found to detain Petitioner pending disposition of the criminal charges. On April 21, 1995, the criminal charges against Petitioner were dismissed

for lack of prosecution. Because the criminal charges had been dismissed, the Board charged Petitioner as a technical parole violator on April 25, 1995, alleging that he violated Parole Condition No. 5b, which prohibits the parolee from possessing a firearm.[4] A preliminary hearing was held at which the report of Philadelphia Police Officer Ralph Domenic, the arresting police officer in the incident on December 28, 1994, was introduced. Based on the arrest report, the examiner determined there was probable cause for the technical charge of possession of a weapon.

On July 7, 1995, the Board held a violation hearing wherein Officer Domenic testified to the following facts. On December 28, 1994, Officer Domenic and his partner responded to a medical call at 113 West Roosevelt Boulevard. No one answered the front door, and, as a result, the officers went around to the back door. They then observed Petitioner sitting in a vehicle in a private driveway behind the residence. Because the vehicle did not have any tags or an inspection sticker, the officers thought the car was probably stolen. After Petitioner failed to produce identification, he was asked to step out of the car and was patted down by Officer Domenic who found a .32 caliber revolver containing four live rounds tucked in Petitioner's waistband. He was then placed under arrest.

Subsequent to the hearing, the Board issued an order recommitting Petitioner as a technical parole violator to serve his unexpired term of one year, three months and three days. The Board further noted "prior parole failure" and "threat to the community" as aggravating reasons. Petitioner's request for administrative relief was denied and he petitions this Court for review.[5]

1. This opinion was reassigned to the authoring judge on April 30, 1996.

2. On February 15, 1996, this Court filed a memorandum opinion in *Cromartie v. Pennsylvania Board of Probation and Parole,* 269 M.D.1995, which overruled the Board's preliminary objections to a mandamus and declaratory judgment action filed by Cromartie in the Court's original jurisdiction. That action has been stayed pending the disposition of this appeal.

3. The Pennsylvania Uniform Firearms Act in 18 Pa.C.S. § 6106(a) prohibits the carrying of a concealed firearm without a license and in 18 Pa.C.S. § 6108 prohibits carrying a firearm without a license upon the public streets or public property in the City of Philadelphia.

4. 37 Pa.Code § 63.4(5)(ii).

5. This Court's scope of review of a Board's recommitment order is limited to determining

In addition to arguing that the recommitment was not supported by substantial evidence, Petitioner contends that the Board erred in several respects:

- failing to exclude the evidence from the illegal search of his person;
- failing to hold the preliminary hearing and the violation hearing in a timely manner as required by the Board' regulations;
- failing to apply the doctrines of res judicata and collateral estoppel;
- denying him his right to confront and cross-examine the police officer at the preliminary hearing; and
- recommitting him for more than the presumptive range without written justification.

## I.

Petitioner first contends that the search of his person was illegal because Officer Domenic had neither probable cause nor a reasonable suspicion to believe that Petitioner was currently or had been involved in any criminal activity. Petitioner argues that without a sufficient basis for the search, the seizure of the firearm from his person violates his Fourth Amendment right to be secure against unreasonable searches and seizures. Relying primarily on this Court's decision in *Scott v. Pennsylvania Board of Probation and Parole*, 668 A.2d 590 (Pa. Cmwlth.1995), Petitioner contends that the

exclusionary rule is applicable in the present case and that the evidence obtained by Officer Domenic should have been excluded from the revocation hearing.[6]

Recently, in *Kyte v. Pennsylvania Board of Probation and Parole*, 680 A.2d 14 (Pa.Cmwlth.1996), we reiterated the long established ruled that unlike in criminal prosecutions, where evidence is excludable due to violations of the Fourth Amendment, the Fourth Amendment's exclusionary rule is not applicable to parole revocation procedures. *See also Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); *Johnson v. Pennsylvania Board of Probation and Parole*, 107 Pa.Cmwlth. 183, 527 A.2d 1107 (1987); *Nickens v. Pennsylvania Board of Probation and Parole*, 93 Pa.Cmwlth. 313, 502 A.2d 277 (1985); *Zimmerman v. Pennsylvania Board of Probation and Parole*, 83 Pa.Cmwlth. 282, 476 A.2d 1016 (1984).

In *Kyte*, the parolee's parole agent conducted a warrantless search of a room, not in parolee's residence but where parolee was present, and found a knife. Based on the knife and the parole agent's testimony, the Board recommitted him for a technical parole violation of Condition 5b. After reviewing the discussion in *Kates* about whether the purposes of the exclusionary rule would be served by its application to probation and parole revocation hearings,[7] we concluded, as our Supreme Court had in *Kates*, that:

whether necessary findings of fact are supported by substantial evidence and are in accordance with law, and whether any constitutional rights of the parolee have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Feilke v. Pennsylvania Board of Probation and Parole*, 167 Pa.Cmwlth. 381, 648 A.2d 121 (1994). The Board has the burden of proving technical parole violations by a preponderance of the evidence. 37 Pa.Code § 71.2(19); *Hawkins v. Pennsylvania Board of Probation and Parole*, 88 Pa.Cmwlth. 547, 490 A.2d 942 (1985).

**6.** Petitioner also relies on *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993). In that case, a new criminal prosecution of a parolee, our Supreme Court held that the Fourth Amendment of the United States Constitution prohibits the warrantless search of probationer's or parolee's residence based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search. The Supreme Court held that the evi-

dence found in the search must be suppressed in the criminal action against Pickron, because factually, neither consent nor a regulatory framework was present. The decision in *Pickron* is completely inapplicable to this case because it excludes evidence in a criminal prosecution, whereas this is a parole revocation hearing, which is not a criminal proceeding.

**7.** Expansion of the exclusionary rule to probation revocation hearings would in all likelihood further its laudable purpose of deterring unconstitutional methods of law enforcement. But the good to be obtained from such expansion must be balanced against the harm which will result due to the unique nature and purpose of the probation revocation hearing. If the rehabilitative function of the probation system is to be fostered, it seems imperative that the judge charged with the responsibility and discretion to grant, deny or revoke probation be fully aware of all the facts and circumstances in a particular case.

[T]his type of constitutional objection [a Fourth Amendment violation] does not preclude the evidence from being presented during a probation revocation hearing and does not form the basis of a denial of due process.

*Kyte,* 680 A.2d at 17, quoting *Kates,* 452 Pa. at 121, 305 A.2d at 711.

Moreover, in *Kyte,* we overruled our prior decision in *Scott,* relied on by Petitioner here. In *Scott,* this Court addressed the exclusion of evidence obtained when a parole supervisor conducted a warrantless search of a parolee's approved residence without the consent of the owner, the parolee's mother. Although recognizing that Pennsylvania courts (as well as a number of other states and federal courts) have refused to apply the exclusionary rule to parole revocation proceedings, the decision applies a balancing of interests framework to the facts of that case. The balance of interests test had been set forth by the United States Supreme Court to determine whether the exclusionary rule is applicable to other types of proceedings. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). However, it had never been applied to the facts of a parole or probation case to determine if the exclusionary rule applies. To the contrary, in *Kates,* our Supreme Court applied the balancing test generally to determine if evidence should ever be excluded from parole and probation revocation hearings due to constitutional violations and then held, as a matter of law, that the exclusionary rule does not apply to the revocation hearings.

Because our decision in *Scott* was at variance with *Kates,* it was overruled and is inapplicable here. We find no error in the Board's admission of the testimony and evidence from the search of Petitioner. *Kyte.* Additionally, based on the proper admission of Officer's Domenic's testimony and evidence, there was substantial evidence for the Board's finding that Petitioner possessed a

*Kates,* 452 Pa. at 118–120, 305 A.2d at 710, quoting *United States ex rel. Lombardino v. Heyd,* 318 F.Supp. 648, 651 (E.D.La.1970), *aff'd,* 438 F.2d 1027 (5th Cir.1971), *cert. denied,* 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971).

weapon in violation of Condition 5b of his parole.

## II.

Petitioner also contends that the Board erred because the preliminary and violation hearings were not held in a timely manner. The Board's regulations state that the preliminary hearing for a violation of parole conditions "shall be held within 14 days of the detention of the parolee on the Board warrant". 37 Pa.Code § 71.2(3). The effect of the regulation is that the preliminary hearing on charges of violating conditions of parole must be held within 14 days of either the arrest of the parolee on a Board warrant or the lodging of the warrant as a detainer at the facility where the parolee is already confined. *Woods v. Pennsylvania Board of Probation and Parole,* 79 Pa. Cmwlth. 134, 469 A.2d 332, 335 (1983). If probable cause is found in the preliminary hearing, a violation hearing "shall be held not later than 120 days after the preliminary hearing". 37 Pa.Code § 71.2(10); *Woods.*

Because of the criminal charges flowing from Petitioner's arrest on December 28, 1994, the Board issued a detainer on December 30, 1994, for criminal parole violations.[8] However, after the criminal charges were dismissed, the Board issued a second detainer on April 25, 1995, based on technical parole violations. (Certified Record, Document # 12). Petitioner's preliminary hearing was held on May 8, 1995, within 14 days of the Board's second detainer. The violation hearing was held on July 7, 1995, within 120 days of the preliminary hearing.

Petitioner mistakenly asserts that the time limitations begin to run from the date of the Board's original detainer, based on the criminal charges, December 30, 1994, rather than from the detainer as a technical parole violator. Just as the actions for convicted parole violations and technical parole viola-

8. A parolee may be detained on a Board warrant pending the disposition of new criminal charges without violating the time limitations for violations hearings. 37 Pa.Code § 71.3(2).

tions are separate,[9] detainers initiating those actions are separate actions and are treated as such in the regulations. To follow Petitioner's logic, any time criminal charges are dismissed after 120 days from the Board's detainer based on those charges, technical violations could not be filed. Because the regulations establish that the time runs from the Board's warrant detaining him for technical parole violations, the Board's hearings were timely.

■ Nor has the Board violated Petitioner's due process rights, as he implies, because *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), requires only a timely disposition of parole violation charges *once they are filed.* A parolee suffers no deprivation of liberty because of a delay in filing parole violation charges, even if he is incarcerated during that time on criminal charges. *Garfield v. Pennsylvania Board of Probation and Parole,* 71 Pa. Cmwlth. 390, 454 A.2d 1187 (1983).[10] *See also Carr v. Pennsylvania Board of Probation and Parole,* 90 Pa.Cmwlth. 312, 494 A.2d 1174 (1985).

### III.

■ Petitioner next contends that the Board erred in recommitting him on a technical parole violation because it had previously held a detainer hearing based on the criminal charges, which arose from the same underlying facts, and because the criminal charges were dismissed. He argues that the Board's recommitment on the technical parole violations is barred by the doctrine of res judicata and collateral estoppel, citing *Knox v. Pennsylvania Board of Probation and Parole,* 138 Pa.Cmwlth. 344, 588 A.2d 79 (1991).

■ The doctrine of res judicata generally applies when the cause of action in one proceeding is identical with that involved in a prior judgment. *Id.* 588 A.2d at 81. The doctrine dictates that a final judgment on the merits is conclusive of the rights of the parties and constitutes a bar to subsequent action involving that same claim, demand or cause of action. *Id.*[11] An identity of causes of action is found when the subject matter and the ultimate issues are the same in both proceedings. *Id.* In *Knox,* at a revocation hearing based on criminal convictions for retail theft, the Board's hearing examiner found that Knox had been convicted by a district magistrate which is not a court of record and denied the recommitment. The parole agent recharged the parolee with technical parole violations for the same conduct and Knox was recommitted. We held that the doctrine of res judicata prevented the Board from recommitting Knox on the technical parole violations in a second Board hearing when those charges could have been brought in the first adjudication, because the cause of action in the adjudications was identical. *Id.* at 82.

Unlike in *Knox,* which involved two civil recommitment hearings before the Board, the doctrine of res judicata does not apply here because the causes of action are not identical. The first cause of action, in Philadelphia Municipal Court, was for the criminal violation of carrying an unlicensed firearm, while the second one before the Board was for a civil violation of a parole condition to refrain from possessing a weapon, each involving different elements and burden of proof. Also, unlike in *Knox,* when the criminal action here was dismissed, it was not a final judgment on the merits so as to make res judicata applicable. *See Robinson v.*

9. Section 21.1 of the Act of August 6, 1941, P.L. 861, added by the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a.

10. Although in *Garfield,* the criminal charges for which Petitioner was in custody prior to the charges for parole violations were unrelated to the parole violations, we see no reason for a different result here. Although the Board's course of action, charging technical parole violations after criminal charges for which Petitioner was charged as a convicted parole violator were dropped may smack of unfairness to Petitioner, the Board is permitted to charge a parolee with technical violations for conduct that was the basis of criminal charges and is permitted to hold charges based on the criminal conduct pending the disposition of those criminal charges.

11. The four conditions which must be shown to support a claim of res judicata are (1) the identity of the thing sued upon; (2) the identity of the cause of action; (3) the identity of the persons or parties to the action; and, (4) the identity of the parties suing or sued. *Knox,* at 82.

*Trenton Dressed Poultry Company,* 344 Pa. Superior Ct. 545, 549, 496 A.2d 1240, 1242 (1985).

██ Petitioner also asserts that res judicata effect can be given the determination at the detention hearing to hold him pending the outcome of the criminal charges. The detention hearing is held to determine if there is probable cause for the new criminal charges and is not a final judgment on the merits. Therefore, like criminal preliminary hearings, there is no res judicata effect of the decision to detain Petitioner until the disposition of the criminal charges.

██ Similarly, the doctrine of collateral estoppel [12] is inapplicable because there was no final adjudication on the merits either by the discharge of the criminal case or the detention hearing, and because, even where the parolee was acquitted, the Board may recommit a parolee as a technical parole violator for conduct that was also the subject of criminal prosecution. *Wallace v. Pennsylvania Board of Probation and Parole,* 119 Pa.Cmwlth. 508, 548 A.2d 1291 (1988); *Nickens; Hawkins.*[13]

### IV.

██ Petitioner also contends that his right of confrontation and cross-examination of Officer Domenic was violated at the preliminary hearing because the police officer was not available for testimony but his police report was the basis of the finding for probable cause. The purpose of the preliminary hearing is limited to a determination of "whether there is probable cause to believe that the parolee has committed a parole violation". 37 Pa.Code § 71.2(1)(v); *Morrissey; Fallings v. Pennsylvania Board of Proba-*

*tion and Parole,* 94 Pa.Cmwlth. 77, 502 A.2d 787 (1986). The United States Supreme Court established in *Morrissey* that at the preliminary hearing, the right to confrontation and cross-examination is limited due to the informal nature of the hearing:

> *On request of the parolee,* a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.

*Morrissey,* 408 U.S. at 487, 92 S.Ct. at 2603 (emphasis added). Because there is no evidence in the record (C.R.# 13) and Petitioner does not even assert that he requested the presence of Officer Domenic at the preliminary hearing, Petitioner's right to confrontation and cross-examination was not violated by the police officer's absence. *Fallings,* 502 A.2d at 790. This is particularly true because Officer Domenic testified at the violation hearing and Petitioner was able to confront and cross-examine him at that time. *Id.*[14]

### V.

██ Petitioner also contends that his recommitment was beyond the presumptive range for a violation of Condition 5b, which is six to twelve months under 37 Pa.Code § 75.4. The Board's regulations state that the presumptive ranges of backtime to be imposed are "intended to structure the discretion of the board while allowing for individual circumstances in terms of mitigation and aggravation". 37 Pa.Code § 75.3(b). However, the Board may deviate from the presumptive range so long as it provides sufficient written justification, 37 Pa.Code § 75.3(c), and the aggravating reasons found by the Board must be supported by substantial evidence in the record. *Moroz v. Penn-*

12. The doctrine of collateral estoppel is applicable when the second cause of action is different than the first in order to prevent the relitigation of issue of fact or law actually litigated and determined by a valid and final judgment in the first action. *Knox,* 588 A.2d at 81 n. 6. The following elements must be present for collateral estoppel to apply: (1) the issue decided in the prior adjudication is identical with the one presented in the latter action; (2) there was a final judgment on the merits; (3) the party who is to be estopped was a party or in privity with a party to the prior adjudication; and, (4) the party who is to be estopped had a full and fair opportunity

to litigate the issue in question in the prior action. *Nickens.*

13. Collateral estoppel was applied to a violation hearing in *Boswell v. Pennsylvania Board of Probation and Parole,* 98 Pa.Cmwlth. 386, 512 A.2d 66 (1986); however, that case is limited to its narrow factual situation.

14. Petitioner's argument that a finding of good cause was necessary is not supported by the regulations which require such a finding only if a witness is not available for cross-examination at a violation hearing. 37 Pa.Code § 71.2(10)(v).

*sylvania Board of Probation and Parole,* 660 A.2d 131 (Pa.Cmwlth.1995). The Board's order stated two aggravating reasons in this case, "prior parole failure" and "threat to the community". (C.R.# 19). Those former reasons are supported by the certified record which established his prior recommitment for a criminal conviction for driving under the influence of alcohol and for technical violations. The latter reason is supported by the Board's finding that Petitioner was in possession of a .32 caliber revolver containing four live rounds. As we stated in *Moroz,* the Board has broad discretion to demand strict compliance with the terms of its conditions and to determine appropriate penalty for any noncompliance. *Id.* at 133.

Accordingly, because the Board's findings are supported by substantial evidence and having found no errors in the Board's procedures or decision, we affirm.

### ORDER

AND NOW, this 1st day of July, 1996, the order of the Pennsylvania Board of Probation and Parole, dated August 25, 1995, Parole No. 3972–S, denying administrative relief from the order of recommitment as a technical parole violator, is affirmed.

SMITH, J., dissents.