698 A.2d 32

**Keith M. SCOTT, Appellee,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 16, 1996.

Decided July 3, 1997.

Thomas W. Corbett, Jr., Gregory R. Neuhauser, John G. Knorr, Harrisburg, for PBPP.

George W. Westervelt, Jr., Stroudsburg, for Keith M. Scott.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

This appeal presents the issue of whether a parolee who consents to warrantless searches as a condition of parole is entitled to invoke the protections of the Fourth Amendment in a parole revocation proceeding. For the following reasons, we affirm.

The record establishes that on April 2, 1982, Keith M. Scott, Appellee, was sentenced to a ten to twenty year term of imprisonment on his plea of *nolo contendere* to third degree murder. With an effective date of March 31, 1983, the Department of Corrections calculated the minimum expiration date on Appellee's sentence as March 31, 1993, and the maximum term expiration as March 31, 2003.

On September 1, 1993, Appellee was released on parole subject to enumerated conditions. Condition 5(b) provides that Appellee shall refrain from "owning or possessing any firearms or other weapons." A further provision in the "Conditions Governing Parole/Reparole" states:

I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in [sic] the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

R. 5a.

Upon his release from prison, Appellee resided at the home of his mother and stepfather, Patricia and John McDaniel. On February 4, 1994, while at a local diner with Dorothy Hahn, Appellee was arrested by three parole officers pursuant to a

warrant issued by the Pennsylvania Board of Probation and Parole (Board) to commit and detain him for technical parole violations. The violations involved parole condition 5(b), with respect to possession of a .22 Magnum revolver on September 4, 1993, and the possession of a 10 millimeter Glock handgun sometime in September of 1993. The violations also concerned parole condition 5(c), which prohibits Appellee from engaging in "any assaultive behavior," and parole condition 7, which states, in part, that Appellee "must not consume alcohol under any condition for any reason." [1]

Before he was transported to the Monroe County Correctional Facility by Agent Dunham, Appellee gave his keys to Agent Mundro. Dorothy Hahn then drove Appellee's vehicle to his residence and Agents Mundro and Gallo followed. When they arrived, no one was home. Agent Mundro then handed Hahn the key and instructed her to unlock the door. Upon entering the residence, Hahn telephoned Mrs. McDaniel, Appellee's mother. The agents awaited her arrival and, when she returned home, informed her that they were going to conduct a search of Appellee's bedroom. They neither requested nor received consent. Upon request of the agents, Mrs. McDaniel hesitantly directed the agents to the room.

After finding no evidence of a parole violation in Appellee's bedroom, the agents searched the adjacent room, which was used as a sitting room for Mrs. McDaniel. The room contained two small sofas, an ironing board and a television. Agent Mundro found five firearms under one of the sofas. One of the guns was in a zippered shotgun case, while the other four guns were wrapped in a white cloth and secured by electrical tape. The guns were not loaded and no ammunition was found. Agent Mundro also recovered a compound bow and three arrows in a closet in the room. Mrs. McDaniel explained that the firearms belonged to her husband and that Appellee was unaware of their presence.

On March 30, 1994, a parole violation hearing was held before an administrative law judge (ALJ). The ALJ admitted

---

1. These violations are not at issue in the instant appeal and are mentioned merely to set forth the factual predicate of the case.

the evidence resulting from the search of the residence over defense counsel's objection.[2]  Appellee argued that the agents' conduct violated his right against unreasonable searches and seizures.   When asked by the ALJ to explain the legal guidelines established for him to conduct the search, Agent Mundro responded:

> [A]ny individual under the supervision of the Pennsylvania Board of Probation and Parole can have his residence searched by representatives of the Board with or without the homeowner's permission if this is the parolee or probationer's approved residence.   I was merely informing [Appellee's] mother that we were going to search, and I asked her to please show us where his bedroom was.   We also have the right to search any common living areas in the residence.

R. 62a.

Agent Mundro was also asked whether he had been advised by someone that shotguns and rifles were in the house.   He stated:

> As speaking with [Agent] Gallo prior to making the arrest of [Appellee], he [Agent Gallo] indicated that there may be firearms in the home.   I don't recall that we discussed specifically what types of firearms we might find, but we definitely did discuss the fact that there may be some in the home.

R. at 69a.   Agent Mundro further stated that he did not recall the source of the information regarding the existence of the firearms.   *Id.*

2.  The charge on this violation stated:

> 1.  *Violation of Condition No. 5b:*  YOU SHALL REFRAIN FROM OWNING OR POSSESSING ANY FIREARMS OR OTHER WEAPONS. (3 counts)
>
> \* \* \*
>
> c.  On 2–4–94, the following weapons were confiscated from your approved residence:  one (1) Mossberg 12 gauge pump shotgun, serial no. G878391;  one (1) Glenfield 12 gauge bolt action shotgun, serial no. 71357747;  one (1) Stevens 12 gauge single shotgun, no serial number;  one (1) Harrington–Richardson 12 gauge single shotgun, serial number 918060;  one (1) Glenfield .22 caliber semiautomatic, Model 60, serial no. 23506068, and one (1) Green Camo–Colored Compound bow plus three arrows.

Appellee testified that he did not know the guns were in the home since his mother informed him that they had been removed. Mr. McDaniel testified that the guns belonged to him. He explained that he was aware that firearms were not permitted in Appellee's approved residence, and that he therefore removed the firearms from the gun closet and secured them under the couch in anticipation of giving them to his brother.

On June 6, 1994, the Board recommitted Appellee to serve 36 months backtime. It found that sufficient evidence supported all the violations concerning the possession of weapons and the consumption of alcohol. On September 6, 1994, the Board modified its previous decision by adding two aggravating reasons for its decision: (1) that Appellee had committed multiple violations and, (2) that he is considered a threat. Appellee sought administrative relief from the Board which was denied on November 8, 1994.

Appellee then appealed to the Commonwealth Court, contending *inter alia,* that the ALJ admitted evidence resulting from the search of the residence in violation of his Fourth Amendment rights. The Commonwealth Court reversed and remanded. Relying primarily on *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993), the court concluded that a parole agent may not conduct a warrantless search of a parolee's residence in the absence of the consent of the owner or a statutory framework that satisfies the reasonableness requirement of the Fourth Amendment. It found that the consent provision in Appellee's parole agreement did "not comport with the dictates of *Pickron."* Commonwealth Court Opinion, 668 A.2d 590, 597 n. 3. Applying a balancing test, the court further held that the exclusionary rule was applicable to the instant parole revocation hearing because the deterrence of unlawful police conduct substantially outweighed the injury which would result from excluding the evidence obtained from Mundro's illegal search of Appellee's residence.[3] On May 15,

3. The court also reversed and remanded on the charges concerning the possession of a weapon on September 4, 1993 and the consumption of

1996, we granted the Commonwealth's petition for allowance of appeal.

In an *en banc* opinion filed on July 1, 1996, the Commonwealth Court overruled its decision in this case "to the extent that it [held] that a balancing test applies and that evidence from the warrantless search should have been excluded from the parole revocation hearing." *Kyte v. Pennsylvania Board of Probation and Parole*, 680 A.2d 14, 18 n. 8 (Pa.Cmwlth. 1996).[4] The *en banc* panel in *Kyte* found that it was well-established that the exclusionary rule was inapplicable to parole revocation hearings. It quoted extensively from our decision in *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973).

As noted, we granted allocatur to determine whether Appellee is entitled to the protections of the Fourth Amendment in his parole revocation hearing when he signed a consent to search provision as a condition of his parole.[5] We must first determine whether Appellee, as a parolee, has any protection under the Fourth Amendment. If we conclude that he does, we next examine the effect of his signing the consent to search provision in his "Conditions of Parole/Reparole." Finally, if we conclude that his right remains and was violated, we must determine whether, pursuant to the Fourth Amendment, the exclusionary rule applies to the administrative function of parole revocation.

Our recent decision in *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997), resolves our first two inquiries. In

alcohol. It found that the admission of an affidavit was hearsay and constituted reversible error.

4. Judge Kelley filed a concurring and dissenting opinion in which Judge Smith and Judge Friedman joined. Judge Kelly agreed that there was sufficient evidence to support the Board's finding of a parole violation, but disagreed as to the overruling of *Scott* since our Court had already granted allocatur in the matter at that time.

5. The Fourth Amendment to the United States Constitution states:

[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Williams,* the defendant was paroled from prison and, as a condition of his release, signed a consent to search provision identical to the one signed by Appellee. Williams's parole agent subsequently received information from a reliable confidential informant that Williams had resumed his drug dealing activities. This information was confirmed by the local police. The parole agents then, without a warrant or the consent of the owner of the residence, searched Williams's bedroom and discovered 182.2 grams of cocaine, a pocket scale and ammunition. The parole officer contacted the local police, who seized the evidence and obtained an arrest warrant.

Criminal charges were brought and Williams filed an omnibus motion to suppress the evidence seized from his bedroom on the ground that the search violated his constitutional rights. The trial court denied suppression. The Superior Court reversed and remanded, concluding that Williams's rights under the Fourth Amendment were violated.

In analyzing the suppression issue, we recognized that although parolees and probationers have a diminished expectation of privacy, "a probationer's home like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable." Op. at 585, 692 A.2d at 1035, quoting *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987).[6] We explicitly held that a parolee has a privacy interest protected by the Fourth Amendment, although it is a more narrowly protected privacy

6. In *Griffin,* the Court held that a warrantless search of a probationer's residence was "reasonable" and did not violate the Fourth Amendment. The search was conducted pursuant to a state regulation which permitted warrantless searches of probationers if there are "reasonable grounds" to believe that contraband is present in their residence. The Court stated that the "special needs" of the state in supervising probationers justifies the departure from the usual probable cause requirements. The evidence recovered as a result of the search was therefore admitted in a subsequent criminal trial.

While *Griffin* concerned a probationer's Fourth Amendment rights, the analysis employed equally applies to the constitutional rights of a parolee. See *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973); *Cox v. Commonwealth,* 507 Pa. 614, 493 A.2d 680 (1985).

interest than that afforded a free individual. Op. at 585, 692 A.2d at 1036.

We also relied on *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993), where we held that the Fourth Amendment prohibited the warrantless search of a parolee's residence based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search.[7] Like *Williams, Pickron* involved the suppression of illegally obtained evidence in a criminal trial.

In deciding what effect the signing of the consent provision had on Williams's limited rights under the Fourth Amendment, we "balanc[ed] the governmental interests involved in granting parole and supervising parolees with that interest of the private individual, i.e., the parolee, which has been affected by the governmental action." Op. at 586, 692 A.2d at 1035, citing, *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

We concluded that,

the parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches. Rather, the parolee's signature acts as acknowledgement that the parole officer has a right to conduct reasonable searches of his residence listed on the parole agreement without a warrant.

Op. at 588, 692 A.2d at 1036.

We went on to say that a "search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Id.* This "middle

---

7. In 1995, the General Assembly enacted a legislative framework for searches conducted by state and county parole officers. See 61 P.S. §§ 331.27a and 331.27b. As the search in the instant case occurred in 1994, these provisions are not applicable.

ground" approach requires reasonable suspicion to search a parolee's approved residence, rather than probable cause. We concluded that reasonable suspicion existed to support the search of Williams's bedroom since the information upon which it was based was given by a reliable confidential informant and was confirmed by the local police. Accordingly, we found that the evidence was admissible in the criminal proceeding.

Applying *Williams* to the instant case, we hold that Appellee has a Fourth Amendment right against unreasonable searches and seizures that is unaffected by his signing of the consent to search provision. We further find that this right was clearly violated since the search was conducted without reasonable suspicion. Agent Mundro testified that he spoke with Agent Gallo prior to the search and they concluded that there *may* be firearms in the home. Agent Mundro did not recall the source of the information regarding the existence of the weapons. Thus, the agents' suspicion was based on mere speculation and was insufficient to support a warrantless search of the room adjacent to Appellee's bedroom.

■ It does not necessarily follow, however, that exclusion of the evidence in the parole revocation proceeding is required. We recognize that the Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677, citing *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands. *Id.* at 906, 104 S.Ct. at 3411. The remedy available in *Williams, Pickron* and *Griffin,* i.e., the application of the exclusionary rule, does not automatically apply to Appellee as parole revocation is an administrative proceeding.

In determining whether the exclusionary rule should be extended, we must balance the potential benefits of excluding the evidence against the potential injury to the historic role and function of the proceedings in which the illegally obtained

evidence is to be admitted. If the potential harm substantially outweighs potential benefits, then the rule should not be extended. *United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

The Board, as Appellant, contends that this issue is controlled by our decision in *Commonwealth v. Kates,* which involved three consolidated probation violation cases. One probationer challenged the admissibility of a statement obtained absent *Miranda* warnings in violation of the Fifth Amendment. Another contended that he was precluded from confronting his accuser in contravention of the Sixth Amendment. The third probationer argued that it was improper to conduct a revocation proceeding prior to a criminal trial based upon the same conduct.

Balancing the good to be obtained from the expansion of the exclusionary rule against the harm which would result due to the unique nature and purpose of the probation revocation hearing, we concluded that the illegally obtained evidence was admissible in the probation violation hearing. *Kates,* 452 Pa. at 120, 305 A.2d at 710. Citing the United States Court of Appeals for the Second Circuit in *Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163–1164 (2nd Cir.1970), we stated that

> ... A Parole [sic] revocation proceeding is concerned not only with protecting society, but also, and most importantly with rehabilitating and restoring to useful lives those placed in the custody of the Parole Board. To apply the exclusionary rule to parole revocation proceedings would tend to obstruct the parole system in accomplishing its remedial purposes.

> There is no need for double application of the exclusionary rule, using it first as it was used here in preventing criminal prosecution of the parolee and a second time at a parole revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution.

*Id.* at 119, 305 A.2d at 710 (footnote omitted).

The decisions in *Kates* and *Sperling* focus on the sole purpose of the exclusionary rule under the United States

Constitution which is to deter unlawful police conduct. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The rationale is that applying the exclusionary rule to probation revocation hearings would at most marginally deter police misconduct and would frustrate the remedial purposes of the probation system.

A majority of the United States Courts of Appeals that have addressed the issue have agreed with this proposition and have found that the exclusionary rule is *generally* inapplicable to parole revocation hearings. See *United States v. Finney,* 897 F.2d 1047 (10th Cir.1990); *United States v. Bazzano,* 712 F.2d 826 (3rd Cir.1983), *cert denied,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984); *United States v. Frederickson,* 581 F.2d 711 (8th Cir.1978); *United States v. Farmer,* 512 F.2d 160 (6th Cir.1975); *United States v. Brown,* 488 F.2d 94 (5th Cir.1973); *United States v. Hill,* 447 F.2d 817 (7th Cir.1971). Only the United States Court of Appeals for the Fourth Circuit has held that the exclusionary rule is generally applicable to parole revocation hearings. *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978).[8]

Our research indicates, however, that two circuit courts of appeals, while adhering to the *general* rule that the exclusionary rule is inapplicable in parole revocation hearings, have adopted a limited application of the rule in instances where the law enforcement officers knew or had reason to know that the suspect was on probation. In *United States v. Winsett,* 518 F.2d 51 (9th Cir.1975), the Court of Appeals for the Ninth Circuit found that the interest in deterring police misconduct outweighs the interest in implementing the probation system when the officer is aware of the suspect's probationary status. The court reasoned,

> [W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in

**8.** To date, the United States Supreme Court has not spoken on this issue.

the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.

*Id.* at 54 n. 5.

While reaffirming its decision in *Sperling*, upon which we relied in *Kates*, the Second Circuit Court of Appeals has accepted this view as well. *United States v. Rea*, 678 F.2d 382 (2nd Cir.1982). The court noted that the police officer in *Sperling* was unaware of the probationer's status and held that evidence seized by a probation officer in an illegal warrantless search of a probationer's home is inadmissible at a subsequent probation revocation hearing. The court stated:

[A] probation officer who seeks to discover and seize evidence for use in a probation revocation hearing is very likely to be deterred from proceeding without a warrant if the officer knows that evidence so seized is apt to be excluded from the very proceeding with which he is concerned.

*Id.* at 390.

We are persuaded by this approach which considers the knowledge of the officer engaging in the misconduct.[9] While the harm to the parole revocation proceeding from application of the exclusionary rule remains the same whether or not the

9.  We note that some of the federal courts which have precluded the use of the exclusionary rule in probation revocation proceedings have not been faced with the factual scenario where the officer who conducted the search knew or had reason to know that the suspect was a parolee or probationer. The court in *Finney* noted that it need not determine this specific issue since the facts did not support the officer's knowledge in that regard. 897 F.2d at 1048. The *Bazzano* court expressly left open the question whether the exclusionary rule should be applied in a probation revocation proceeding if the police knew or had reason to know that the target of their search was a probationer. 712 F.2d at 833 n. 1. (Garth, J., dissenting). Finally, in *Hill*, the court recognized the fact that the suspect was *not* known to the officers to be a probationer or parolee. 477 F.2d at 819 (Fairchild, J., dissenting).

officer is aware of the parolee's status, the benefits obtained from expanding the rule are quite different.

Our focus is on the likelihood of deterring official misconduct. To illustrate the point, we first examine the instance when a police officer is unaware of the parolee's status. In that situation, the officer sees the parolee as any other citizen with full constitutional protection. The officer has no incentive to illegally obtain evidence as he is cognizant that such evidence will most likely be subject to suppression. Thus, the deterrent purpose of the exclusionary rule is adequately served by the application of the rule in the criminal trial. There is no reason to apply the rule in a parole revocation hearing because it is unlikely to act as an *additional* deterrent to illegal police behavior. In other words, because the police officer has no knowledge of a possible parole revocation hearing, the application of the exclusionary rule in that proceeding would not act to deter police misconduct in obtaining evidence to present there. When balancing the relevant interests, the scale tips in favor of the efficient operation of the revocation proceeding.

A different balance exists, however, when the officer knows or has reason to know that the suspect is a parolee or probationer. When the suspect's parole/probation officer or a police officer aware of the parolee's status engages in the misconduct, the balance is different. Under these circumstances, when there is no reasonable suspicion of a parole violation, there is a need to apply the exclusionary rule to the revocation process since otherwise there is nothing to deter a parole agent from conducting an illegal search or engaging in other illegal activity to obtain evidence. The parole agent could establish a parole violation by means of illegally obtained evidence in a proceeding which places a minimal burden of proof upon the Commonwealth,[10] and the same result would be achieved as if the parolee was criminally tried—the parolee

10. Our courts have consistently held that in parole and probation revocation proceedings the Commonwealth's burden is to prove a violation by a preponderance of the evidence. *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985).

would be incarcerated. In this limited instance, the deterrent effect to be gained through application of the exclusionary rule in parole revocation hearings substantially outweighs the potential injury to the functioning of the revocation proceedings.

In the Fourth Amendment context, when an officer is aware or has reason to be aware of a suspect's parole or probationary status, he must have reasonable suspicion of a parole violation in order to conduct a search. If reasonable suspicion does not exist, the exclusionary rule will apply in the parole revocation hearing.[11] This holding modifies our *per se* bar against the application of the exclusionary rule in parole revocation hearings set forth in *Kates* and applies the exclusionary rule in revocation hearings when the officer who engaged in the misconduct is aware of the parolee's status.[12]

Applying the rule to the instant case, we find that it is clear that Agents Mundro and Gallo knew Appellee was a parolee. This is established by the fact that immediately prior to the search, the agents arrested Appellee for parole violations. The exclusionary rule should therefore apply to Appellee's parole revocation hearing and the evidence obtained from the illegal search of his residence should be suppressed.[13]

11. We note that the recently enacted statute provides that "[a] property search may be conducted by any [parole] agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 P.S. § 331.27a.(d)(2). The statute also provides that although no violation of the section can establish an independent ground for suppression of evidence in any probation/parole or criminal proceeding, the section should not be construed to permit searches in violation of the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. See 61 P.S. § 331.27a.(b)–(c).

12. The outcome in *Kates*, however, would remain unchanged since there is no evidence that the police officers involved were aware of the probationary status of the suspects.

13. Our decision is premised solely upon federal constitutional grounds. The history of our counterpart to the Fourth Amendment, Article I, Section 8 of the Pennsylvania Constitution, indicates that the purpose underlying the exclusionary rule in this Commonwealth is two-fold. We have held that "the exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article I, Section 8; to-wit, the safeguarding of privacy and the fundamental requirement that warrants

Accordingly, for the reasons set forth herein, the order of the Commonwealth Court is affirmed.

NEWMAN, J., did not participate in the consideration or decision of this case.

shall only be issued upon probable cause." *Commonwealth v. Edmunds*, 526 Pa. 374, 398, 586 A.2d 887, 889 (1991). Appellee, however, has not raised a claim under the Pennsylvania Constitution and therefore we leave for another day the question of the applicability of the exclusionary rule in an Article I, Section 8 challenge in a parole revocation proceeding.

The statement in *Commonwealth v. Williams* that our state constitution does not grant greater rights with regards to warrantless searches by parole agents, Op. at 591, 692 A.2d at 1039, must be read in the context of that case, which involved a criminal prosecution and not a parole revocation.